**Don Dale PEDDICORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–95–0163–CR.**

Court of Appeals of Texas,
Amarillo.

Feb. 28, 1997.

Laura A. Robnett, Assistant Public Defender, Dallas, for appellant.

John Vance, Criminal District Attorney, Donald G. Davis, Aaron Wiley, Bryan Reese, Dallas, for appellee.

Before DODSON and QUINN, JJ., and REYNOLDS, Senior Justice.*

CHARLES L. REYNOLDS, Senior Justice, (Assigned).

Rejecting appellant Don Dale Peddicord's plea of not guilty, a jury found him guilty of the misdemeanor offense of driving while intoxicated, and the trial court assessed his punishment at confinement in the county jail for 365 days, probated for 24 months, and a fine of $800.00. Appellant seeks a reversal and dismissal on his first contention that (1) the evidence is legally insufficient to establish beyond a reasonable doubt that he was driving while intoxicated; or, alternatively, he seeks a new trial on contentions that the trial court (2) erred in allowing his custodial interrogation to be admitted into evidence, (3–4) abused its discretion in denying his motion to suppress the results of the blood test, and (5) erred in refusing his request to charge the jury relating to the law on warrantless arrests. We will overrule the five points of error and affirm.

■ The prosecution stemmed from appellant's involvement, on February 18, 1993, in a traffic accident in a public place at a time he allegedly was operating a motor vehicle while intoxicated. Initially contending the evidence was insufficient to establish beyond a reasonable doubt that he was driving while intoxicated, appellant specifically invokes the standard of review for legal sufficiency of the evidence as articulated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, the evidence is viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* 443 U.S. at 319, 99 S.Ct. at 2789. To determine the evidential sufficiency, all the evidence adduced, whether properly or

improperly admitted, must be considered. *Dunn v. State*, 721 S.W.2d 325, 327 (Tex.Cr. App.1986).

■ In presenting his contention, appellant does not challenge the evidence that he was intoxicated while in a motor vehicle in a public place; instead, his contention is that the State failed to prove beyond a reasonable doubt that he drove or operated the motor vehicle. *See* Tex. Penal Code Ann. § 49.04(a) (Vernon Supp.1997) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place"). Thus, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found that appellant drove or operated the motor vehicle beyond a reasonable doubt.

■ Appellant correctly asserts that no witness saw him operate a vehicle and, therefore, the State was required to prove its case through circumstantial evidence. But appellant, erroneously relying upon *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Cr.App.1984), incorrectly submits that his conviction cannot be sustained if the circumstantial evidence does not exclude every reasonable hypothesis except that of his guilt. The *Johnson* decision was rendered more than seven years before the opinion in *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991), which rejected the [*Johnson*] reasonable hypothesis analytical construct standard of review, *id.* at 161, in favor of the *Jackson v. Virginia* standard of review. *Geesa v. State*, 820 S.W.2d at 159 n. 6. That standard of review is employed in viewing both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex.Cr.App.1995).

■ During our evidential review, we do not act "as a super-jury re-weighing the evidence; rather, we act only 'as a final, due process safeguard ensuring ... the rationality of the factfinder.'" *Urbano v. State*, 837 S.W.2d 114, 115 (Tex.Cr.App.1992) (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Cr.App.1988)). In this regard, we accord deference to the jury's right to believe or

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex.

Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1997).

reject all or some portion of the testimony of each witness, including appellant. *Gipson v. State,* 819 S.W.2d 890, 892 (Tex.App.—Dallas 1991), *aff'd,* 844 S.W.2d 738 (Tex.Cr.App. 1992). Then, if there was evidence which established guilt beyond a reasonable doubt, and if the trier of fact believed that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Cr. App.1984).

The State's evidence revealed that Charles Livingston stopped his vehicle behind another vehicle in the left lane of a three lane public road in Dallas County, waiting for a red traffic light to change so he could turn left at an intersection. To his right, in the center lane, were two vehicles stopped at the red traffic light, the first of which was an Oldsmobile operated by Kathryn Clark, and the second was a Toyota van operated by Audrey McCombs. Livingston heard a crash to his right. Looking that way, he saw the Toyota van going past and crashing into a vehicle in front of it, the Oldsmobile, and into the vehicle in front of him. He also saw a brown car with a smashed front end, later identified as a Honda, which had struck the Toyota.

Clark heard a loud noise and then felt the impact of the collision. She got out of her car, looked to see what happened, then returned to her car, cut off the motor, and went to the curb. From three car lengths away she saw the two-door Honda, which had struck the Toyota, with appellant sitting behind the steering wheel. She did not see appellant driving the Honda.

Livingston, who had served as a Naval Hospital Corpsman with specialized training for severe trauma, immediately ran to the Toyota occupied by McCombs, who was seatbelted in the driver's seat. He turned off the engine, put the gear in park, and asked, and received a response, concerning any injury.

Then, within two minutes after the accident, Livingston went to the Honda which had struck McCombs's Toyota "to make sure," because of its sustained damages, "that they were breathing." He found a person, whom he identified as appellant, in the driver's seat, slumped over the wheel and not wearing a seat belt. Livingston conceded he did not see appellant drive or operate the vehicle. In the vehicle were two female passengers, one in the front passenger's seat, who had a lot of glass on her face and in her mouth, and the other passenger in the rear seat appeared to Livingston to be fine.

Appellant was conscious, but not alert or oriented. He had slurred speech, a very strong smell of alcohol on his breath, and only a visible injury of some bleeding from his chin, albeit he grabbed his chest when asked if he was hurt. He wanted to get out of the car, but Livingston told him to remain, "because you may have some internal injuries." For medical reasons, particularly to determine whether anyone was in a diabetic coma, Livingston asked the occupants if they had been drinking, and the female in the passenger's seat replied, "Yes, we have been drinking."

Despite Livingston's admonition, appellant became belligerent; he wanted to get out of the vehicle and kept banging his shoulder against the door, but the door was jammed. Livingston, who stayed with appellant for at least five to ten minutes, tried to calm him, explaining that an ambulance, which did arrive ten to fifteen minutes after the accident, was on its way. Livingston, who had been trained to recognize intoxicated persons, opined that appellant "was heavily intoxicated." When the ambulance arrived, Livingston went to visit with McCombs.

The first Dallas police officers to arrive at the scene were Michael David Barnett and Anita Dickason. When they arrived, appellant was standing on the corner near the Honda. Barnett's investigation revealed that the Honda had come from a service station, failed to yield the right of way, and struck the Toyota. Based on his five years experience, his contact with about 100 intoxicated persons, and his observation of described symptoms exhibited by appellant, Barnett was of the opinion that appellant was intoxicated from consuming alcohol. Appellant, who did not complain of a head injury at the time, did not seem to know he had been in an accident and where he was, which in Bar-

nett's opinion, was unquestionably a product of his consuming alcohol.

Dickason, a certified instructor in field sobriety testing, who had made more than 340 arrests for driving while intoxicated, observed that appellant, who was standing on the curb, was awake and alert, complaining of his swollen finger and cursing the paramedics, who were trying to treat him. His speech was slurred, he had an extremely strong odor of alcohol, he had difficulty maintaining his balance, he weaved when he walked, and his attitude demonstrated moods swings. By these signs and symptoms, Dickason suspected that appellant was intoxicated, so she conducted a horizontal gaze nystagmus field sobriety test to confirm her suspicions. During the test, appellant exhibited six clues indicating intoxication. Although appellant had cuts and scrapes on his head, Dickason saw nothing indicating, nor did appellant complain of, a head injury. Dickason placed him under arrest for the offense of driving while intoxicated, but did not advise him of his constitutional rights. She seated him in a police vehicle, unhandcuffed out of her concern for his swollen finger.

Robert P. Burke, a Dallas police officer assigned as a traffic accident investigator, arrived at the scene and conducted an investigation. His investigation revealed that the Honda came from a gas station parking lot and collided with the Toyota. In the course of his investigation, he talked with appellant, but did not advise him of his rights. When it became apparent he was going to be asked about the conversation, appellant unsuccessfully objected.[1] Over the objection, Burke was permitted to testify that, among other things, appellant said he was driving the Honda at the time of the accident.

After Dickason placed appellant in the police vehicle, he complained of chest pains and indicated he wanted medical treatment. Dickason called an ambulance and, awaiting its arrival, told appellant several times he could not smoke. Appellant, who held a cigarette pack in one hand and a lighter in the other, insisted that he was going to light a cigarette. As Dickason attempted to take the cigarette pack, appellant struck at her, and Barnett, who had been summoned, pulled appellant out of the vehicle and handcuffed him.

When the ambulance arrived, appellant refused treatment; but, when the ambulance returned some twenty minutes later, he wanted to go to the hospital. The paramedic testified appellant's main injury was a broken finger and he said he had a back pain. On his run sheet, the paramedic marked that appellant was awake and alert, and checked "head" in the block for location of injuries, recalling that appellant may have said he had a headache since the paramedic did not recall any injuries to his head.

Barnett accompanied appellant in the ambulance to Parkland Memorial Hospital. Dickason followed fifteen or twenty minutes later when she finished working the accident scene. She, desiring to secure a specimen of appellant's blood, signed a "POLICE OFFICER DWI STATUTORY WARNING" form, certifying that she gave, and testified that she read verbatim to appellant, the warning contained in the form.[2] The form contains a space for the signature of appellant if he refused the request, which was unsigned, Dickason said, because he agreed to give the

---

1. Appellant's objection, heard outside the presence of the jury, was, in effect, that since he was under arrest at the time of the interrogation, any oral statement he made was inadmissible absent a showing that he had been advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), and Article 38.22(3) of the Texas Code of Criminal Procedure Annotated (Vernon Supp.1997).

2. The form contains, among other matters, these material warnings:

You are under arrest for the offense of Driving While Intoxicated. You will be requested to submit to the taking of a specimen of your Breath/Blood (strike one) for the purpose of analysis to determine the alcohol concentration or the presence of a controlled substance or drug in your body.
If you refuse to give the specimen, that refusal may be admissible in a subsequent prosecution....
The form also contains the information that the refusal will result in the automatic suspension of the arrestee's driver's license, subject to his written request for a hearing on the suspension.

blood specimen. She assumed appellant understood what was going on, but she did not specifically ask him if he understood.

Derrick Thomas, a registered nurse at the hospital, identified hospital records which showed that appellant was subjected to an EKG, apparently because he was complaining of some chest pain, and that he had a contusion on his forehead, but without neurological, sensory, or motor deficits. Thomas also identified another hospital record, which indicated that on the occasion of appellant's admission to the emergency room, he was requested to consent, and appellant both orally and by his signature on the record consented, to Thomas drawing his blood. The blood specimen taken by Thomas was conveyed to R.M. Ruff, chemist with the Dallas County Institute of Forensic Science, whose test of the specimen showed 0.15 grams of ethyl alcohol per 100 milliliters of blood, which was more than the 0.10 blood alcohol concentration that indicates intoxication.

Considering the evidence adduced, whether properly or improperly admitted, in the light most favorable to the verdict, it is apparent that appellant's statement to Burke that he was the driver of the Honda, together with the circumstances that within two minutes after the accident appellant was discovered in the driver's seat of the damaged Honda, were sufficient for any rational trier of fact to find beyond a reasonable doubt that appellant was the driver of the Honda. *Fruechte v. State,* 166 Tex.Cr. 496, 316 S.W.2d 418, 419 (1958). Appellant's first point of error is overruled.[3]

As an integral part of his first-point contention and as the subject of his second point of error, appellant contends the court reversibly erred in admitting, over his objection noted in marginal note 1, his admission to

Burke that he was driving the Honda. He asserts that since he was under arrest and in custody, his oral admission resulting from custodial interrogation was inadmissible, *Stone v. State,* 612 S.W.2d 542, 547 (Tex.Cr. App.1981); *Jimmerson v. State,* 561 S.W.2d 5, 8 (Tex.Cr.App.1978), and since his admission was the only direct evidence that he was driving, it cannot be held that the error made no contribution to the conviction.[4]

■ The State attempts to justify the admission on the theory that Burke did not know appellant had been placed under arrest and, thus, his questioning of appellant, as indicated in the trial court's findings, was not custodial interrogation, but was merely an investigatory gathering of information for the accident report required to be sent to the Department of Public Safety. It is undisputed that appellant had been placed under arrest and was in custody, and it is obvious that Burke's questioning was an interrogation likely to elicit an incriminating response from him, *see Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980), all of which occurred without appellant being advised of his rights. Consequently, the State's attempt to justify the admission not only is at odds with established principles, *see Stone v. State,* 612 S.W.2d at 547; *Jimmerson v. State,* 561 S.W.2d at 8, but it is not supported by authority, for all of the decisions relied upon by the State involve situations where the accused's remarks were made during the investigatory process, which had not shifted to the accusatory stage, and before the accused was arrested and taken into custody. *See, e.g., Allen v. State,* 536 S.W.2d 364, 370 (Tex.Cr. App.1976).

■ The erroneous receipt of appellant's admission, proving an essential element of the offense, is reversible error, un-

---

3. Appellant's brief was filed before the rendition of the decision in *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App.1996), which validated an appellant's right to appellate review of fact questions, *id.* at 129; however, appellant neither amended nor supplemented his brief to raise a question of the factual sufficiency of the evidence to support his conviction.

4. With a sub-point under his second point, appellant faults the trial court for not entering findings of fact and conclusions of law regarding the voluntariness of his admission to Burke that he was driving the vehicle. However, after the appellate record was received, we abated the appeal and remanded the cause for such findings and conclusions, which were made, filed, and included in a supplemental transcript without any challenge to them by appellant.

less it is determined beyond a reasonable doubt that the error made no contribution to the conviction. Tex.R.App. P. 81(b)(2). To determine whether the evidence, independent of appellant's admission, is sufficient, when viewed in the light most favorable to the verdict, for any rational trier of fact to find beyond a reasonable doubt that appellant drove or operated the Honda at the time of the accident, we must calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Cr.App.1989). Then, after examining the source and nature of the error, the extent of its emphasis by the State, and its probable collateral implications, we must determine whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Id.* at 587–88.

Although the State succeeded in getting appellant's admission before the jury over vigorous objection, neither the State nor appellant thereafter alluded to or made any reference to the admission in their arguments to the jury, which mainly centered on the issue of intoxication. Aside from the admission, the evidence reveals the Honda was driven from a gas station lot and collided with McCombs's Toyota, which was propelled into Clark's Oldsmobile. Immediately after the accident, Clark left her vehicle, returned to cut off the motor, and went to the curb, from where she saw appellant sitting behind the steering wheel of the Honda. Within two minutes of the accident, Livingston went to the Honda and saw appellant sitting in the driver's seat behind the wheel. The only visible sign of injury seen by Livingston was some bleeding from appellant's chin and, when appellant was asked if he was hurt, he grabbed his chest. The female passenger in the front seat had glass on her face and in her mouth, and the female passenger in the rear seat appeared to be unharmed.

There is no evidence to suggest, as appellant proposes, that one of the female passengers could have been driving the Honda at the time of the collision and changed seats with appellant before he was seen sitting in the driver's seat behind the wheel. Indeed,

given the time element and the observed injuries, the evidence negates the proposal.

Appellant and the female in the front seat exhibited injuries, and the female in the rear seat did not; therefore, the reasonable deduction from the evidence is that the female in the rear seat was neither in the front seat nor the driver at the time of the collision. Not only the position of the front seat occupants shortly after the collision, but appellant's complaint of chest injury, and the presence of glass on the face and in the mouth of the female in the front seat, were consistent with appellant being the driver and having struck the steering wheel, and the female being the front seat passenger and having struck the windshield, at the time of the collision. The evidence does not lend itself to any other reasonable interpretation.

It follows that any rational trier of fact would not have reached a different result if appellant's admission of driving had been excluded. Thus, we conclude beyond a reasonable doubt that the erroneous receipt of appellant's admission did not contribute to appellant's conviction or punishment. Tex. R.App. P. 81(b)(2). Appellant's second point of error is overruled.

The trial court conducted a pretrial hearing on appellant's motion to suppress the results of the blood test taken at the hospital. The State called Dickason, whose testimony regarding the circumstances bearing on appellant's intoxication was essentially that of her trial testimony recounted earlier, except she said that she read appellant the *Miranda* and *Article 38.22* warnings referred to in marginal note 1 after she had read and completed the statutory warning requesting a blood sample.

Appellant testified that he did not recall being involved in the accident, and his earliest recollection was awakening in the hospital about three o'clock in the morning. He described his injuries as hitting his head "pretty hard," the intercostal muscles between his ribs and chest were badly torn, and he had a broken finger. He attributed his injuries to his belief that his head struck the windshield because the steering wheel was completely collapsed and the windshield was "busted and pushed out," and the underneath plastic was

broken where his knees hit. He denied any recollection of being advised about a breath or blood test, or about his rights, or of giving consent for blood to be drawn from his body. He also denied that of his own free will he gave anybody consent to take the blood.

The court denied the motion to suppress without specifying the reason. The denial, appellant advocates with his third and fourth points of error, was an abuse of discretion. The abuse resulted, appellant contends, because (3) the blood was drawn without his voluntary and informed consent after arrest, and (4) the results of the blood test were obtained as the incident to an unlawful arrest.

■ When an appellate court is requested to determine whether the trial court's denial of a pretrial motion is erroneous, the general rule is that only evidence adduced at the hearing on the motion is considered; however, when, as here, the issue has been consensually relitigated during the trial on the merits, consideration of the relevant trial testimony is appropriate. *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex.Cr.App.1984). The consideration is particularly appropriate here, for appellant refers to the trial evidence as support for his contentions, and it has the virtue of permitting unlimited review of evidence pertinent to the court's ruling. *Webb v. State*, 760 S.W.2d 263, 272 n. 13 (Tex.Cr.App.1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989).

■ The trial court's denial of the motion to suppress the result of the blood test may not be disturbed on appeal unless an abuse of discretion is shown. *Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Cr.App.1993). In so ruling, the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Cr.App.1996). Because the trial court did not specify its reason for the denial of the motion to suppress, its ruling will be upheld if it is correct under any theory of law applicable to the cause. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Cr.App.1990).

■ The taking of a specimen of appellant's blood involved the broadly conceived reach of a search and seizure, *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966), and being taken without a warrant, was per se unreasonable, unless conducted pursuant to a recognized exception, one of which is consent. *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Cr.App.1976). Although appellant, in essence, denied both any recollection of the events surrounding, and his own free-will consent to, the taking of a specimen of his blood, the trial court was not bound to credit his testimony, *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Cr.App.1978), particularly in view of the contrary evidence from Dickason and Thomas. The court was privileged to believe Dickason's testimony that, after being given the statutory warning, appellant orally consented to providing the blood specimen, and Thomas's corroborating testimony that appellant both orally and by his signature on the hospital record consented to his drawing the specimen of blood.

Consequently, the trial court's denial of appellant's motion to suppress the result of his blood test, which included the tacit finding that the blood specimen was obtained with appellant's voluntary and informed consent, was at least within the zone of reasonable disagreement and, as a result, was not an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Cr.App.1991). Appellant's third point of error is overruled.

Contending the blood test was obtained as the incident to an unlawful arrest, appellant submits his arrest without a warrant was in violation of the Fourth Amendment to the United States Constitution and Article I, Section 9, of the Texas Constitution. He has properly distinguished the federal and state issues with separate arguments to permit their consideration. *See McCambridge v. State*, 712 S.W.2d 499, 501–02 n. 9 (Tex.Cr. App.1986), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990).

■ The basic purpose of the federal and state constitutional provisions upon which appellant relies is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials; therefore, an arrest effected without a war-

rant issued upon probable cause is, like a search conducted without a warrant issued upon probable cause, per se unreasonable, except for a few specifically well-delineated exceptions. *See Kolb v. State*, 532 S.W.2d at 89. An exception to the federal constitutional requirement for an arrest warrant is a warrantless arrest made on probable cause, *Schmerber v. California*, 384 U.S. at 768, 86 S.Ct. at 1834; and, an exception to the state constitutional requirement for an arrest warrant is a warrantless arrest made on probable cause under conditions specified in articles 14.01–14.04, Texas Code of Criminal Procedure Annotated (Vernon 1977 & Supp. 1997). *Adkins v. State*, 764 S.W.2d 782, 785 (Tex.Cr.App.1988).

 Probable cause exists when the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient in themselves to warrant in a person of reasonable caution the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175–76,, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *Adkins v. State*, 764 S.W.2d at 785. Sufficient probable cause existed under federal law for Dickason to arrest appellant without a warrant when it was evinced the officers had reasonably trustworthy information that appellant was driving the Honda at the time of the collision when, as revealed by the officers' observations and Dickason's tests, he was intoxicated. *Schmerber v. California*, 384 U.S. at 768–69, 86 S.Ct. at 1834–35.

 Advocating the illegality of his arrest under Texas law, appellant first points out that an analysis and interpretation of Article I, Section 9 of the Texas Constitution is not controlled by Supreme Court decisions addressing the comparable Fourth Amendment issue, because state constitutions can provide additional rights to their citizens. *Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Cr.App.1991). Appellant's only argument is that his arrest was not authorized by article 14.01, *supra*, which provides in its paragraph

(b) that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view," because the officers did not personally observe him driving the Honda.

Yet, given the inapplicability of article 14.01, *supra*, appellant does not otherwise contend that his arrest was illegal. The State seeks to uphold the arrest under article 14.03, *supra*, which provided at the time of appellant's arrest that any peace officer may arrest without warrant persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws. Act of May 26, 1991, 72nd Leg., R.S., ch. 542, § 9, 1991 Tex. Gen. Laws 1877, 1879 (amended 1994 & 1995) (current version at Tex.Code Crim. Proc. Ann. art. 14.03) (Vernon Supp.1997).

It is unnecessary to address the State's position, for at the time of the event, the officers, pursuant to the evidence adduced, were authorized to arrest appellant for public intoxication, despite the fact that Dickason said she arrested appellant for the offense of driving while intoxicated. *Warrick v. State*, 634 S.W.2d 707, 709 (Tex.Cr.App.1982) (citing *United States v. Fossler*, 597 F.2d 478 (5th Cir.1979)); *Reynolds v. State*, 902 S.W.2d 558, 560 n. 3 (Tex.App.—Houston [1st Dist.] 1995, pet'n ref'd). This obtains since "[a] person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another." Tex. Penal Code Annotated § 49.02 (Vernon 1994).[5]

 Although no officer saw appellant drive the Honda, they observed the aftermath of the accident involving the Honda with appellant sitting behind the steering wheel on a Dallas street, a public place. Tex. Penal Code Ann. § 1.07(a)(40) (Vernon 1994). They were of the unanimous opinion that appellant was intoxicated. Inasmuch as an essential element of the offense is that appellant *may* endanger himself or others, a po-

---

5. Article 14.03, *supra*, was amended, effective September 1, 1994 to include an "offense under Section 49.02, Penal Code." Act of May 29, 1993, 73rd Leg., R.S., 1993 Tex. Gen. Laws 3586, 3715 (amended 1995) (current version at Tex.Code Crim. Proc. Ann. § 14.03 (Vernon Supp.1997)).

tential danger, which need not be immediate nor apparent to the arresting officer, *Padilla v. State*, 697 S.W.2d 525, 526 (Tex.App.—El Paso 1985, no pet'n), is sufficient to show the element. *Dickey v. State*, 552 S.W.2d 467, 468 (Tex.Cr.App.1977). The potential danger existed in this instance because appellant, having already endangered both himself and others, could have, absent proof otherwise, attempted to drive the Honda from the scene in an intoxicated condition, thereby constituting a clearer danger. *Id.*; *Reynolds v. State*, 902 S.W.2d at 560; *Segura v. State*, 826 S.W.2d 178, 185 (Tex.App.—Dallas 1992, pet'n ref'd); *Padilla v. State*, 697 S.W.2d at 526–27).

As a consequence of appellant's warrantless arrest being lawful under both federal and state authorities, the result of his blood test was admissible. *Schmerber v. California*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36; *Warrick v. State*, 634 S.W.2d at 709 (holding that evidence found as a result of a lawful arrest for public intoxication was admissible). Appellant's fourth point of error is overruled.

■ With his fifth point, appellant charges the trial court with reversible error in refusing his requested jury charge on the issue of warrantless arrests. The requested charge read:

> You are instructed that under our law a peace officer may, without a warrant, arrest an offender when the offense is committed in his presence or within his view. An arrest made in violation of this law is unlawful.
>
> You are further instructed that under our law no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be considered as evidence against the accused on the trial of any criminal case.
>
> Now, therefore, if you believe, or if you have a reasonable doubt, that the arrest of the defendant in this case was unlawful, then and in such event you will disregard any evidence relating to the arrest of the Defendant and any evidence obtained as a result of the arrest of the Defendant.

Alternatively, appellant requested the same charge, except for the omission of the second sentence in the first paragraph.

Appellant's point is predicated upon his argument that "[t]he law requires an officer to actually view the offense before a warrantless arrest can be made." From this, he concludes that since the officers did not see him driving and they did not obtain an arrest warrant, the horizontal gaze nystagmus test and the blood test would have been inadmissible if the jury had determined that his arrest was illegal.

The predicate for appellant's point is faulty, for he merely presupposes his warrantless arrest could only be for driving while intoxicated not committed within the view of the arresting officer. However, as it has been explained, appellant's warrantless arrest was lawfully made for the offense of public intoxication, even though he was actually prosecuted for the offense of driving while intoxicated. Appellant did not request a charge regarding a warrantless arrest for the offense of public intoxication.

■ It follows that the trial court did not err in refusing appellant's requests, because neither of his requested charges would constitute the law applicable to the prosecution, and the jury should not be charged on a defensive theory that is contrary to the law, *Turpin v. State*, 606 S.W.2d 907, 912–13 (Tex. Cr.App.1980), or does not represent an accurate statement of the law, *Wickware v. State*, 488 S.W.2d 127, 129 (Tex.Cr.App.1972), or is immaterial. Appellant's fifth point of error is overruled.

The judgment is affirmed.