NUMBERS 13-01-00320-CR


 13-01-00369-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JOEL ZAMORA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 332nd District Court of Hidalgo County, Texas.


 


O P I N I O N



Before Justices Hinojosa, Castillo, and Chavez (1)


Opinion by Justice Hinojosa



 On March 12, 2001, a jury found appellant, Joel Zamora, guilty of the offense of
murder in cause number 13-01-00320-CR (2) and, after finding that appellant was under the
immediate influence of sudden passion arising from an adequate cause, assessed his
punishment at fifteen years imprisonment. On April 30, 2001, the trial court revoked
appellant's community supervision in cause number 13-01-00369-CR, (3) ordered that he be
confined for five years, and ordered that the sentence run consecutively with the sentence
in cause number 13-01-00320-CR. The trial court has certified that these cases are not
plea-bargain cases and "the defendant has the right of appeal." See Tex. R. App. P.
25.2(a)(2).

 In six issues, appellant contends the trial court erred in: (1) denying his motion to
suppress; (2) allowing the hearsay testimony of Yolanda Zamora; (3) revoking his
community supervision; (4) denying his requested article 38.23 jury instruction; (5)
admitting his oral statements; and (6) denying his requested article 38.22 jury instruction. 
We affirm.

A. Background and Procedural History


 At the time of the murder, appellant was married to the victim, Margarita Zamora
("Margarita"). The two were living together in Colonia Olivares in Mission, Texas. The
couple had six children, including Yolanda Zamora ("Yolanda"), Veronica Zamora
("Veronica"), and Alex Zamora, whose common-law wife is Angelica Ortega ("Angelica").

 On February 12, 2000, Yolanda, Veronica, and Angelica were driving to Margarita
and appellant's home. As the three women approached the house, they saw Margarita
running along the side of the house. As they got closer, they could see that she had blood
on her. Appellant was walking behind her. Appellant's pace was not that of a chase and
he was not carrying a weapon, but he had blood on his shirt. Margarita got into the car. 
The three women took her to the hospital. 

 When Margarita first got into the car, she was able to speak. Yolanda asked her,
"Who did this to you?" Margarita responded, "Tu papá." (4) Margarita was pronounced dead
shortly after she arrived at the hospital. The cause of death was laceration of the heart,
caused by a knife wound.

 Deputy Esteban Garcia, Jr. ("Garcia") of the Hidalgo County Sheriff's Office was
dispatched to the hospital to investigate the murder. After Margarita's family relayed the
events as they knew them thus far, Garcia proceeded to the scene of the murder. When 
Garcia arrived, appellant was standing in front of the house. Garcia had been told by the
Zamora family that appellant had allegedly committed the murder, so as a precautionary
measure, he detained appellant in handcuffs, placed him in the patrol car, and read him
his Miranda rights in Spanish. Appellant was cooperative.

 Garcia's initial inspection of the house revealed blood stains on the stairs to the
entry of the house. He entered the house and performed a cursory search to determine
if there were other possible victims. Garcia remained in the house about thirty to forty
seconds and observed only blood stains and a bloody shirt on the couch. All were in plain
view of the officer. Garcia was soon joined at the scene by Sergeant Saenz.

 Approximately one hour later, Inspector Norberto Leal, III ("Leal") arrived at the
scene. Immediately after his arrival, Leal read appellant his Miranda rights in Spanish. 
Appellant indicated he understood his rights and then stated that he had killed his wife. 
Leal then entered the house to see if anyone else was inside. Once he determined there
were no other victims, Leal exited the house. While inside, his observations were the same
as those of Garcia. 

 When crime scene investigator Joel Castro ("Castro") arrived, he and Leal went
inside the house to collect evidence. They observed a bloody knife in between the couch
and a dresser.

 Appellant was taken to the Sheriff's Office at approximately 7:00 p.m. Investigator
Noe Canales ("Canales") questioned appellant for approximately four hours. Canales
testified that he read appellant his rights in Spanish as soon as the interrogation began. 
Approximately one-half hour after the interrogation began, Canales had appellant sign a
form acknowledging he understood his rights. Appellant again acknowledged he
understood the interview could be terminated at any time. At no time did the investigating
officers seek an arrest or search warrant. Appellant confessed to the murder.

 Appellant was tried before a jury and found guilty of murder. Subsequently, his
community supervision for a prior aggravated assault case was revoked.

B. Issues Presented


 Appellant raises six issues on appeal. In his first issue, appellant contends the trial
court erred in denying his motion to suppress, arguing that both his confession and the
physical evidence obtained by the sheriff's department were procured from a warrantless
search of his home and a warrantless arrest. In his second issue, appellant challenges the
admissibility of Margarita Zamora's last statement as a dying declaration. In his third issue,
appellant contends his community supervision was improperly revoked because the trial
court based the revocation on a conviction that was in the process of being appealed. In
his fourth and six issues, appellant contends he was entitled to jury instructions on whether
the evidence obtained at the scene was gathered pursuant to an illegal arrest and search. 
In his fifth issue, appellant contends his oral admission of guilt was improperly admitted
into evidence because it does not meet the requisite criteria of admissibility required by
article 38.22 of the code of criminal procedure.

C. Motion to Supress 


 When reviewing a motion to suppress, we give great deference to the trial court's
findings of historical facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We review de novo mixed questions of law and fact that do not turn on an evaluation of
credibility and demeanor. Id. Furthermore, we will sustain the trial court's ruling admitting
the evidence if the ruling is reasonably supported by the record and correct on any theory
of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App.
2002). This is so even if the trial judge gives the wrong reason for the decision. State v.
Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (citing Romero v. State, 800 S.W.2d
539, 543 (Tex. Crim. App. 1990)). 

1. Warrantless Arrest


 In Texas, warrantless arrests are authorized only in limited circumstances. Amores
v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). A police officer may arrest an
individual without a warrant only if the arrest falls within one of specified exceptions and
there is probable cause with respect to that individual. Stull v. State, 772 S.W.2d 449, 451
(Tex. Crim. App. 1989); Davis v. State, 905 S.W.2d 655, 662 (Tex. App.-Texarkana 1995,
pet. ref'd). An exception to the federal constitutional requirement for an arrest warrant is
a warrantless arrest made on probable cause. Schmerber v. California, 384 U.S. 757, 768
(1966). An exception to the state constitutional requirement for an arrest warrant is a
warrantless arrest made on probable cause under conditions specified in Chapter 14 of the
code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 14.01-.04 (Vernon 1977 &
Supp. 2003); Adkins v. State, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988); Peddicord v.
State, 942 S.W.2d 100, 109 (Tex. App.-Amarillo 1997, no pet.). Article 14.03(a)(4)
authorizes a warrantless arrest of a person whom a peace officer has probable cause to
believe has committed an assault resulting in bodily injury to a member of the person's
family or household. Tex. Code Crim. Proc. Ann. art. 14.03(a)(4) (Vernon Supp. 2003).

 Appellant asserts that the State's reliance on article 14.03(a)(4) is misplaced. Thus,
we must determine whether the trial court was within its discretion in finding that the facts
presented fit this exception. 

 Appellant does not challenge the officer's belief that he had probable cause to make
the arrest. Rather, he argues that article 14.03(a)(4) was intended by the legislature to
apply solely to misdemeanor assaults and designed to prevent repeated incidents of
domestic violence.

 Appellant contends that the application of article 14.03(a)(4) to a warrantless arrest
in a murder case is a case of first impression. However, in Jackson v. State, 33 S.W.3d
828, 832 (Tex. Crim. App. 2000), the court of criminal appeals held that police were entitled
to arrest Jackson without a warrant, pursuant to article 14.03(a)(4), because the officers
had probable cause to believe that Jackson had murdered his wife and her two daughters. 
We find no reason not to apply Jackson to the facts of the instant case. When appellant
was arrested, the police officers had probable cause to believe that he had murdered his
wife. Thus, we conclude there was no error in the warrantless arrest of appellant.

2. Warrantless Searches


 It is well settled that unreasonable searches and seizures are unlawful under the
Constitutions of the United States and the State of Texas. U.S. Const. amend. IV; Tex.
Const. art. I, § 9. Warrantless searches are per se unreasonable, unless the search
meets one of a few exceptions. Katz v. United States, 389 U.S. 347, 357 (1967); Kelly v.
State, 669 S.W.2d 720, 725 (Tex. Crim. App. 1984). The United States Supreme Court
and the Texas Court of Criminal Appeals have both recognized the "Emergency Doctrine"
as one of these exceptions. Mincey v. Arizona, 437 U.S. 385, 392 (1978); Brimage v. State,
918 S.W.2d 466, 500-01 (Tex. Crim. App. 1996). The doctrine allows for immediate
warrantless searches when the police come upon the scene of a homicide to determine
if there are other victims, or if a suspected killer is still on the premises. Mincey, 437 U.S.
at 392. During the course of these emergency activities, the police may seize any
evidence that is in plain view. Id. at 393; Bass v. State, 732 S.W.2d 632, 635 (Tex. Crim.
App. 1987). 

 We use an objective standard of reasonableness in determining whether a
warrantless search is justified under the emergency doctrine. Brimage, 918 S.W.2d at 501. 
The facts and circumstances known to the police at the time of the search are used in
applying this objective standard. Id. Also, whether the entry on a claim of emergency is
good or bad in law is determined at the point the entry is made and is not affected by
whatever condition is found inside. Janicek v. State, 634 S.W.2d 687, 691 (Tex. Crim.
App. 1982). 

 In the instant case, Garcia was the first officer to arrive on the scene and enter the
house. At this point, Garcia's knowledge of the events was limited to information he
ascertained at the hospital - that appellant was seen pursuing Margarita, who had been
stabbed, and Margarita told her children that appellant had stabbed her. After arriving and
detaining appellant, Garcia noticed blood stains near the front door of the house. He
entered the house, performed a cursory search which lasted about thirty to forty seconds,
exited the house, and proceeded to secure the area.

 Sometime thereafter, Leal arrived and was briefed by Garcia. He too entered the
house to determine if there were any other victims. Once his search revealed no other
victims, he exited the house. Nothing in the record indicates that Leal's search revealed
any new evidence that had not been identified by Garcia in his initial cursory search. 

 We conclude that it was not unreasonable for Garcia and Leal to enter the house
to determine if there were any other victims. Margarita died following her implication of
appellant, and would have been unable to inform her children of any other possible victims. 
Further, it was reported to Garcia that Margarita was running along the side of the house
towards the street when her daughters and daughter-in-law arrived, and the blood stains
Garcia observed were at the entrance of the house. It was reasonable for him to believe
that the blood may have been from another possible victim inside the house, one whom
Margarita was unable to identify before dying. Furthermore, since Garcia performed only
a brief, cursory search, it was not unreasonable for Leal to enter the house to ensure that
there were no other victims. 

 The trial court heard these facts during the hearing on appellant's motion to
suppress. We hold that the trial court did not abuse its discretion in denying appellant's
motion to suppress. We conclude that the evidence Garcia saw in plain view during the
entry was properly admitted, including the blood stains on the floor, furniture, and shirt.

 The third entry into the house occurred after crime scene investigator Castro arrived
on the scene. Shortly after the arrival, Castro and Leal entered the house. This entry into
the home had no justification, and there is no reason for us to condone it with the
Emergency Doctrine. The two entered the house to gather and examine evidence, not to
search for victims. The officers should have obtained a warrant before entering the house.

 The record shows that evidence obtained during this and subsequent entries by 
Castro, all of which occurred before a search warrant was obtained, consisted of the
identification of other blood stains and the discovery of the murder weapon. We hold that
the trial court abused its discretion in admitting this evidence. Having found error, we must
now determine whether appellant was harmed by the admission of the illegally-seized
evidence.

 The error involved is of constitutional magnitude, so we must reverse unless we can
determine beyond a reasonable doubt that the error did not contribute to the conviction or
punishment. Tex. R. App. P. 44.2(a); Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim.
App. 2000). In conducting this analysis, an appellate court should not focus on the
propriety of the outcome of the trial, but instead, the court should calculate as much as
possible the probable impact of the error on the jury in light of the existence of other
evidence. Wesbrook, 29 S.W.3d at 119. While the most significant concern must be the
error and its effects, the presence of overwhelming evidence supporting the finding in
question can be a factor in the evaluation of harmless error. Id.; see also Motilla v. State,
78 S.W.3d 352, 357 (Tex. Crim. App. 2002). Other factors to be considered include (1) the
source of the error; (2) the nature of the error; (3) whether the error was emphasized and
its probable collateral implications; (4) the weight a juror would probably place upon the
error; and (5) whether declaring the error harmless would encourage the State to repeat
it with impunity. Orona v. State, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990); see also 
Motilla, 78 S.W.3d at 355-56. 

 In the instant case, the source and nature of the error was the trial court's admission
of the murder weapon and the identification of other blood stains which were obtained from
an unlawful search of the Zamora home. During trial, the State emphasized the use of the
knife. However, any collateral implications of admitting the knife into evidence and the
amount of weight the jury placed on the evidence were minimal because the jury heard
other, substantial evidence related to Zamora's commission of Margarita's murder,
including: (1) the testimony of Yolanda, Veronica, and Angelica, implicating appellant; (2)
Margarita's dying words implicating appellant; (3) Margarita's blood identified by Garcia;
(4) appellant's repeated confession; and (5) appellant's shirt with Margarita's blood on it. 
Having considered the record in its entirety, we conclude beyond a reasonable doubt that
the trial court's error in admitting the knife did not contribute to the conviction or
punishment. We overrule appellant's first issue.

D. Dying Declaration 


 In his second issue, appellant contends the trial court erred in admitting into
evidence Margarita's statement implicating him. Appellant asserts that Margarita's
statement did not meet the requirements for the dying-declaration exception to the hearsay
rule.

 An appellate court must review a trial court's admissibility decision under an abuse
of discretion standard. Robbins v. State, 88 S.W.3d 256, 260 (Tex. Crim. App. 2002). So
long as the trial court's evidentiary ruling was within the zone of reasonable disagreement,
the appellate court will not set it aside. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1991). A trial court's ruling to a hearsay objection will be upheld, absent an
abuse of discretion. Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). 

 A statement meets the requirements of the dying-declaration exception to the
hearsay rule if the declarant is unavailable at the time of trial and the statement is "a
statement made by declarant while believing that the declarant's death was imminent,
concerning the cause or circumstances of what the declarant believed to be impending
death." Tex. R. Evid. 804(b)(2); see also Wilks v. State, 983 S.W.2d 863, 866 (Tex.
App.-Corpus Christi 1998, no pet.). A declarant's belief that death was imminent may be
inferred from circumstances of the case, such as the nature of the injury or the declarant's
conduct. Martinez v. State, 17 S.W.3d 677, 689 (Tex. Crim. App. 2000).

 Margarita died shortly after uttering the words "tu papá" in response to Yolanda's
question, "Who did this to you?" As she spoke, Margarita was gasping for her last breaths
of air. The wound inflicted on her was deep enough and placed well enough to puncture
her heart.

 We hold that the trial court acted well within its discretion in determining that
Margarita believed her own death was imminent. Accordingly, we conclude the testimony
was properly allowed into evidence under the dying declaration exception to the hearsay
rule. Appellant's second issue is overruled. 

E. Probation Revocation


 In his third issue, appellant contends the trial court erred in relying on his murder
conviction to revoke his community supervision.

 In its motion to revoke appellant's community supervision, the State alleged
appellant had committed murder and had failed to pay his monthly fees, fines, restitution,
and court costs. Appellant claimed he was indigent and could not make the payments. 
The trial court granted appellant's motion for instructed verdict on the State's allegations
that he had failed to pay his monthly fees, fines, restitution, and court costs. However,
after taking judicial notice of the evidence it heard during appellant's murder trial, the trial
court found that appellant had violated the terms of his community supervision by
committing murder and revoked appellant's community supervision.

 Whether to revoke a defendant's community supervision rests within the discretion
of the trial court. Wester v. State, 542 S.W.2d 403, 405 (Tex. Crim. App. 1976). We review 
evidence presented in the light most favorable to the trial court's decision. Jones v. State,
589 S.W.2d 419, 421 (Tex. Crim. App. 1979). A single violation of a community
supervision condition is sufficient to support the decision of the trial court to revoke the
defendant's community supervision. Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 
1980); Sterling v. State, 791 S.W.2d 274, 276 (Tex. App.-Corpus Christi 1990, pet. ref'd.).

 In revocation matters, the trial judge presiding over the revocation hearing may take
judicial notice of evidence adduced at a criminal trial, over which he also presided, which
gave rise to the basis of the State's motion to revoke. Ex parte Turner, 612 S.W.2d 611,
612 (Tex. Crim. App. 1981); Barrientez v. State, 500 S.W.2d 474, 475 (Tex. Crim. App.
1973). A preponderance-of-the-evidence standard is applied in probation revocation
proceedings. Jenkins v. State, 740 S.W.2d 435, 437 (Tex. Crim. App. 1983).

 Appellant argues that the State could not rely on his murder conviction to revoke his
community supervision because the murder case was still on appeal. However, the record
shows that the State alleged and proved that appellant committed the crime, not that
appellant had been convicted of the crime. Because the trial judge took judicial notice of
the evidence he heard during the murder trial over which he presided, we conclude he did
not err in finding by a preponderance of the evidence that appellant had committed the
murder and in revoking appellant's community supervision. Appellant's third issue is
overruled.

F. Article 38.23 Instruction


 In his fourth issue, appellant complains that the trial court erred in refusing to give
an article 38.23 instruction to the jury.

 Article 38.23 of the code of criminal procedure entitles a defendant to a jury
instruction on the issue of whether evidence was obtained in violation of the Constitution
or laws of the State of Texas or of the Constitution or laws of the United States. Tex. Code
Crim. Proc. Ann. art. 38.23(a) (Vernon Supp. 2003). When the legal evidence raises an
issue of fact, the jury is to be instructed that if it has a reasonable belief that the evidence
was obtained in violation of state or federal law, the jury shall disregard the evidence.
Thomas v. State, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986). Appellant argues that
sufficient evidence existed to support a jury finding that he was illegally arrested and the
searches of his home were also illegal.

 In reviewing alleged jury charge errors, the reviewing court must determine: (1)
whether error actually exists in a charge; and (2) whether any resulting harm requires
reversal. Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998). If an appellant can
show an omission to which he timely objected was erroneous, he is entitled to reversal if
the error was harmful. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984);
see also Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981). 

 Appellant was entitled to an instruction only if the evidence presented at trial raised
a factual issue concerning whether evidence was obtained in violation of the law. See Bell
v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996). The record reflects that no factual
issues were raised in the pre-trial suppression hearings or at trial. Appellant called no
witnesses at the pre-trial hearings or the guilt/innocence phase of the trial. The only
dispute appellant raised to the trial court was the court's application of the law to the
undisputed facts. 

 Accordingly, we hold there is no reversible error in the court's jury charge. 
Appellant's fourth issue is overruled. 

G. Admissibility of Appellant's Oral Statements


 In his fifth issue, appellant contends the trial court erred by admitting his oral
statements into evidence. Specifically, appellant challenges the admissibility of the oral
confession he gave to Leal at the scene of the crime.

 Article 38.22, section 3(a) of the Texas Code of Criminal Procedure sets forth the
requirements for the admissibility of oral statements. That statute provides:


 No oral or sign language statement of an accused made as a result
of custodial interrogation is admissible against the accused in a
criminal proceeding unless:



 an electronic recording, which may include motion picture,
video tape, or other visual recording, is made of the statement;



 prior to the statement but during the recording the accused is
given the warning in Subsection (a) of Section 2 above and the
accused knowingly, intelligently, and voluntarily waives any
rights set out in the warning;



 the recording device was capable of making an accurate
recording, the operator was competent, and that the recording
is accurate and has not been altered;



 all voices on the recording are identified;



 not later than the 20th day before the date of the proceeding,
the attorney representing the defendant is provided with a true,
complete, and accurate copy of all recordings of the defendant
made under this article. 



Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon Supp. 2003).

 Section 3(c) of article 38.22 provides an exception to section 3(a). It states: 


Subsection (a) of this section shall not apply to any statement which contains
assertions of facts or circumstances that are found to be true and which
conduce to establish the guilt of the accused, such as the finding of secreted
or stolen property or the instrument with which he states the offense was
committed.


Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c) (Vernon Supp. 2003).

 As a general rule, an oral confession by an accused in police custody is not
admissible at trial. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon Supp. 2003). 
However, the general rule does not apply to a statement which contains assertions of facts
or circumstances that are found to be true and which conduce to establish the guilt of the
accused. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c) (Vernon Supp. 2003). The facts
or circumstances must be shown to conduce to establish the guilt by showing the
statement led to the discovery of items or information not previously discovered by the
State and must be incriminating. McGilvery v. State, 533 S.W.2d 24, 26 (Tex. Crim. App.
1976). The statute places no limitation upon the manner in which the facts are found to
be true. Port v. State, 791 S.W.2d 103, 106 (Tex. Crim. App. 1990).

 In the instant case, after appellant was in custody, (5) he told Leal that he had stabbed
his wife. His statement was later corroborated by the autopsy report, which stated the
cause of death was a stab wound to the heart. Thus, appellant's assertion was both found
to be true and showed his guilt. 

 We conclude that the provisions of article 38.22 were satisfied. Accordingly, we
hold that the trial court did not err in admitting appellant's oral confession. Appellant's fifth
issue is overruled. 

 In his sixth issue, appellant contends the trial court erred in failing to include an
article 38.22 instruction in the court's charge. Because we have concluded that appellant's
oral confession was properly admitted and appellant failed to produce any evidence which
would create a factual dispute, we also overrule appellant's sixth issue.

 We affirm the trial court's judgment in cause number 13-01-00320-CR. We also
affirm the trial court's order revoking appellant's community supervision in cause number
13-01-00369-CR.

 

 FEDERICO G. HINOJOSA

 Justice



Retired Justice Melchor Chavez not participating.


Do not publish. Tex. R. App. P. 47.2(b).


Opinion delivered and filed this the

29th day of January, 2004.
1. Retired Justice Melchor Chavez, was assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998). However, because Justice
Chavez's appointment expired on August 31, 2003, he is not participating in this opinion. 
2. Trial court cause number CR-0496-00-F.
3. Trial court cause number CR-2358-99-F.
4. Spanish for "your father." 
5. The testimony of Deputy Garcia and Investigator Leal indicate that appellant was in custody prior
to appellant making his oral statement. Furthermore, during the hearing on appellant's motion to suppress,
the State conceded that the moment appellant was placed in the car at the crime scene, he was under arrest.