Michael David Dunn v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-364-CR

MICHAEL DAVID DUNN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

A jury convicted Appellant Michael David Dunn of criminally negligent homicide and further found that the automobile that he was driving when he committed the offense was a deadly weapon.  Appellant elected to be sentenced by the court, and therein lies the tale.  Appellant brings five points on appeal, arguing that the trial court erred by failing to suppress the results of his blood test, that the evidence is both legally and factually insufficient to support the verdict, and that the trial court erred in resentencing him.  Because we hold that the trial court erred in resentencing Appellant but also that the evidence is both legally and factually sufficient and that the blood test results were properly admitted, we modify the judgment to reflect a sentence of two years’ confinement in the Institutional Division of the Texas Department of Criminal Justice (IDTDCJ) and a $10,000 fine and affirm the judgment as modified.

Legal and Factual Sufficiency of the Evidence

Appellant was tried for intoxication manslaughter and manslaughter.  In his third and fourth points, Appellant argues that the evidence is legally and factually insufficient to support the jury’s finding of guilt on the lesser included offense of criminally negligent homicide.  Appellant requested the jury instruction on the lesser-included offense of criminally negligent homicide.  When a defendant requests the inclusion of a jury instruction on a lesser-included offense, he is estopped from challenging on appeal both the legal and the factual sufficiency of the evidence to support his conviction of that lesser-included offense.
(footnote: 1)  We overrule Appellant’s third and fourth points on appeal.

Motion to Suppress Results of Blood Test

In his first point, Appellant contends that the trial court erred by denying his motion to suppress the results of his blood test because his consent was coerced.  The appropriate standard for reviewing a trial court’s ruling on a motion to suppress evidence is a bifurcated standard of review, giving almost total deference to the trial court’s determination of historical facts and reviewing de novo the court’s application of the law to those facts.
(footnote: 2)  If the trial court did not make explicit findings of historical facts, the appellate court reviews the evidence in the light most favorable to the trial court’s ruling, making the assumption that the trial court made explicit findings of fact, supported in the record, that buttressed its conclusion.
(footnote: 3)
 In determining whether consent is valid, the Texas Court of Criminal Appeals has held,

In 
Schneckloth v. Bustamonte
, the United States Supreme Court considered the definition of “voluntary consent” in the context of a search and seizure.  “When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied.”  The Court noted that “voluntariness” goes beyond the literal meaning of “a knowing choice.”  Unless a person is unconscious or incapacitated, all statements made could be considered “voluntary in the sense of representing a choice of alternatives.”  Under this view, even physically-forced consent would be voluntary because, in theory, the suspect had a choice--either consent to the search or be beaten.  On the other hand, we do not ask whether the consent would have been given “but-for” the police actions or inquiries.  Under this view, “virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind.”  Therefore, the premise of voluntariness does not mean that police are required to never question an accused in custody, but they must have limits to the measures taken during their interrogations.

“In determining whether a defendant's will was overborne in a particular case,” the 
Schneckloth
 Court developed the standard by which consent is tested for voluntariness.  Trial courts “must [assess] the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation.” By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily.  Some relevant factors the Supreme Court has taken into consideration in past cases are:  the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment.

The Texas Constitution protects the people against all unreasonable seizures and searches.  A search made after voluntary consent is not unreasonable.  In determining whether a defendant's consent was voluntary, the State is required to prove the voluntariness of consent by clear and convincing evidence.  This Court has held that the trial court must look at the totality of the circumstances surrounding the statement of consent in order to determine whether that consent was given voluntarily.
(footnote: 4)

The trial court as fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 5)
 The evidence showed the following.  Appellant was driving his pickup truck on a two-lane road in Denton County when the pickup crossed over the line into oncoming traffic and crashed head-on into a car driven by the complainant.  Although the complainant was killed on impact, Appellant was able to walk and to speak while still at the scene.  He was shaken up, but he did not appear to witnesses to need medical treatment.  The officer on the scene did not smell alcohol on Appellant.  The officer asked Appellant if he would provide a sample of his blood, and Appellant agreed to do so.  He was not informed of his 
Miranda
 rights.
(footnote: 6)  Appellant was then taken to Denton Regional Medical Center where he provided a blood sample.

The testifying officer stated that Appellant was not placed under arrest, but he equivocated when asked whether Appellant was handcuffed.  Appellant was placed in the back seat of a police car.  The blood tests revealed no alcohol but did show the presence of amphetamine and methamphetamine in Appellant’s system.  The testifying officer denied using threats or other tactics to overbear Appellant’s will.  Appellant did not controvert the officer’s testimony.

Based on the appropriate standard of review,
(footnote: 7) we hold that the trial court did not abuse its discretion by denying Appellant’s motion to suppress the blood test results on the basis of invalid consent because the record supports the trial court’s finding that Appellant voluntarily consented to providing the blood sample for testing.  We overrule Appellant’s first point.

In his second point, Appellant contends that the trial court erred by denying his motion to suppress because the blood test results were not relevant.  Under the Texas Rules of Evidence, “relevant evidence” is defined as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
(footnote: 8)  As the State argues, relying on 
Stewart v. State,
 to be relevant, the evidence does not have to prove or disprove a particular fact by itself; it just has to provide a small nudge toward proving or disproving a fact of consequence.
(footnote: 9)  The first issue presented to the jury was whether Appellant was guilty of intoxication manslaughter due to the introduction of a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into his system.  Appellant argues that the existence of the controlled substance or drug was irrelevant because no one specifically tied the presence of the substance to lack of normal use.  If this is true, it is a failure of proof; the failure of proof does not render the evidence irrelevant but insufficient.
(footnote: 10)  The presence of the substance was an element of the offense as charged and as submitted to the jury.  Consequently, the test results were relevant.  We overrule Appellant’s second point.

Sentencing

In his fifth point, Appellant argues that the trial court improperly withdrew a lawful two-year sentence and replaced it with an eight-year sentence.  We agree.  Criminally negligent homicide is punished as a state jail felony unless a deadly weapon is used.
(footnote: 11)  If a deadly weapon is used, the offense is punished as a third-degree felony.
(footnote: 12)  It is difficult to understand how one could commit a homicide without using an instrument capable of causing death or serious bodily injury.  Consequently, one wonders how criminally negligent homicide could ever be punished as a state jail felony.

Regardless, Appellant was admonished that he was being tried for a state jail felony.  Although the State provided Appellant notice of its intent to seek a deadly weapon finding, the deadly weapon allegation was not contained in the indictment.  The court submitted the issue to the jury, and the jury returned an affirmative finding on the deadly weapon issue.  The record is clear that the trial judge, the prosecutors, the defense lawyer, and Appellant all believed they were trying a state jail felony case.
(footnote: 13)  They did not realize that Appellant faced the punishment of a third-degree felony, and he was not admonished on third-degree felony punishment.

On August 6, after the jury returned its guilty verdict and the affirmative deadly weapon finding, the issue of punishment was tried before the trial court.
(footnote: 14)  On that date, the trial court sentenced Appellant as follows:

THE COURT:  After deliberating, the jury returned a verdict finding you guilty of the offense of criminally negligent homicide.

It is the judgment of this Court that you are guilty in Cause No. F-2003-0556-A, State of Texas versus Michael David Dunn, and that you be punished in accordance with the court’s verdict.

Do you, Mr. Dunn, or your counsel have any legal reason why sentence should not be pronounced against you?

THE DEFENDANT:  No.

THE COURT:  The defendant, having nothing to say, it is the order of the court that you, Michael David Dunn, who has been adjudged to be guilty of the offense of criminally negligent homicide, a felony, in Cause No. F-2003-0556-A, and whose punishment is being assessed at a period of 
two years in prison in the Texas Department of Criminal Justice and a fine of $10,000 –

[PROSECUTOR]:  Your Honor, I believe that would be the state jail division.

THE COURT:  Excuse me.  State jail division.  Thank you.

— to the state jail division be delivered to the sheriff of Denton County, Texas, to serve out the confinement period in the state jail facility for a period of two years.  You’re ordered —  you’re remanded to the custody of the sheriff and — I did assess the fine as well.

You’re, again, remanded to the custody of the sheriff of Denton County until he can carry out the directions and instructions of the sentence.  Your sentence will commence this day and you will receive credit for any time periods of detention as provided by law.

These proceedings are concluded.  [Emphasis added]

On August 13, one week after the trial court imposed the two-year sentence, the trial judge ordered the parties back to court, set aside the two-year sentence, and imposed a sentence of eight years’ confinement in the IDTDCJ and a $10,000 fine.

In criminal trials, the court “may not receive a verdict . . . and enter another and different judgment from that called for by the [jury] verdict.”
(footnote: 15)  A trial judge is without authority to enter a judgment notwithstanding the verdict (jnov) in a criminal case.
(footnote: 16)  Consequently, the trial court was obligated to enter the jury’s deadly weapon finding unless the trial court granted a motion for new trial.  Appellant filed no motion for new trial before the trial court pronounced sentence, and, in a criminal case, only the defendant is authorized to file such a motion.
(footnote: 17)  A new trial may not be granted at the State’s request,
(footnote: 18) nor can the trial court grant a new trial sua sponte.
(footnote: 19)  Consequently, although the trial judge failed to pronounce the affirmative deadly weapon finding, we cannot say that the judge set aside the deadly weapon finding.  Appellant’s punishment therefore had to fall within the range of punishment for a third-degree felony. The range of punishment for a third-degree felony is imprisonment in the IDTDCJ, a prison,
(footnote: 20) for not less than two nor more than ten years.
(footnote: 21)  In addition, a fine of up to $10,000 may be assessed.
(footnote: 22)  A state jail felony is punished by incarceration in a state jail felony facility, a jail, not a prison, that is operated by the state jail division.
(footnote: 23)  When the trial judge pronounced sentence of “two years in prison in the Texas Department of Criminal Justice and a fine of $10,000,” the judge pronounced a valid sentence.

The State treats the issue as though the trial court’s first attempt to sentence Appellant occurred when the trial judge “sentenced” Appellant to two years in the state jail division.  The State, citing 
Banks v. State
,
(footnote: 24) claims that this is a void sentence because the trial court sentenced Appellant to confinement in an unauthorized place.  We note for the sake of clarity that it has long been recognized in Texas jurisprudence that “where the place of confinement stated in the jury verdict is unauthorized it may be treated as surplusage, and judgment may be entered by the [c]ourt specifying the proper place of confinement.”
(footnote: 25)  But more significantly, we note that the State does not appear to recognize in its brief that the trial court’s first pronouncement of sentence—two years’ confinement in the IDTDCJ—might be valid.

In 
Tooke v. State,
 our sister court reversed a trial court's attempt to resentence a defendant after the trial court initially failed to consider an enhancement charge.
(footnote: 26)  The court orally sentenced the defendant to imprisonment for “not less than 5 years nor more than 50 years.”
(footnote: 27)  After realizing it had mistakenly overlooked an enhancement paragraph, the court proceeded to resentence the defendant to a term of “
not less than 15 years
 nor more than 50 years.”
(footnote: 28)  The defendant argued on appeal that the court erred in resentencing him after the sentence had been entered.
(footnote: 29)  Agreeing with the defendant, the 
Tooke
 court explained:

After sentence was first imposed on [the defendant], the trial court was without power to set aside that sentence and order a new sentence. Such attempted resentencing was null and void and of no legal effect. The original sentence was a valid and proper sentence. The court's failure to consider the enhancement paragraph of the indictment prior to first sentencing [the defendant] should not enlarge the court's power over the case.
(footnote: 30)

The appellate court modified the sentence to reflect the original 5 to 50 years' punishment.
(footnote: 31)
 Similarly, in 
Dickerson,
 the First Court of Appeals modified a judgment to reflect the original sentence after a trial court attempted to resentence a defendant with enhancements.
(footnote: 32)  The trial court initially held a punishment hearing that included evidence on two enhancement allegations and sentenced the defendant to two years' confinement.
(footnote: 33)  Within a minute after the court pronounced the sentence, however, the State asked if the trial court had considered and included the enhancements.
(footnote: 34)  The court then immediately ordered the defendant to return to the bench, retracted the first sentence, and resentenced him to twenty-five years’ confinement.
(footnote: 35)  After the defendant complained of the decision to resentence him, the trial court reinstated the original two-year sentence.
(footnote: 36)
 The State appealed, claiming that the twenty-five-year sentence should have been upheld because the court “had the authority to correct an error in the assessment of punishment.”
(footnote: 37)  In affirming the trial court's original sentence, the First Court of Appeals explained,

While . . . the trial court 
meant
 to find the enhancement paragraphs true, three things occurred before it did so: (1) the court imposed a lawful punishment; (2) the court pronounced a valid and proper sentence; and (3) [the defendant] accepted that sentence.  Under these procedural facts, the trial court was not free to “retract the sentence . . . given here” and “resentence” [the defendant], regardless of the fact that the punishment originally assessed was the product of mistake or oversight.
(footnote: 38)

Accordingly, the appellate court modified the judgment by deleting the enhancement finding of “true” and changing the “25 years” to “2 years.”
(footnote: 39) Both 
Tooke
 and 
Dickerson
 stand for the proposition that a court cannot retract a 
valid
 sentence and resentence a defendant to provide for greater punishment. 
 
Judge Cochran has clarified this rule in a concurring opinion in 
McClinton v. State.
(footnote: 40)  In reviewing the extent of a trial court's authority to correct an illegal sentence, Judge Cochran explained that “a trial court . . . does not have the inherent authority to modify, alter, or vacate a 
valid
 sentence orally imposed solely by means of a later written judgment or docket entry.”
(footnote: 41)
 In the case now before this court, the trial court imposed a lawful sentence, immediately replaced it with an unlawful sentence, and then, days later, attempted to replace the unlawful sentence with an otherwise lawful one that greatly increased the punishment.  After the trial court imposed a lawful sentence, the trial court was without authority to change it because Appellant had not filed a motion for new trial seeking a different punishment.
(footnote: 42)  We therefore sustain Appellant’s fifth point.

Conclusion

Having sustained Appellant’s fifth point, we modify the trial court’s judgment to reflect that Appellant is sentenced to two years’ imprisonment in the IDTDCJ and a fine of $10,000 and affirm the trial court’s judgment as modified.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

PUBLISH

DELIVERED:  October 6, 2005

FOOTNOTES
1:
See State v. Lee
, 818 S.W.2d 778, 781 (Tex. Crim. App. 1991) (holding that appellant who requests jury instruction on lesser included offense is estopped from then complaining on appeal that the evidence failed to establish all the elements of that lesser offense), 
disapproved on other grounds
, 
Moore v. State
, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998).

2:
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

3:
Carmouche
, 10 S.W.3d at 327-28; 
Guzman
, 955 S.W.2d at 89.

4:
Reasor v. State
, 12 S.W.3d 813, 817-18 (Tex. Crim. App. 2000) (citations omitted).

5:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

6:
Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).

7:
See
 
Carmouche
, 10 S.W.3d at 327-28; 
Guzman
, 955 S.W.2d at 89.

8:
Tex. R. Evid.
 401.

9:
Stewart v. State
, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

10:
See
 
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

11:
See 
Tex. Penal Code Ann.
 §§ 12.35(c)(1), 19.05 (Vernon 2003).

12:
See id
. § 12.35(c)(1).

13:
See 
Tex. Penal Code Ann.
 §§ 12.35(c)(1) (providing that individual adjudged guilty of a state jail felony shall be punished for a third-degree felony if it is shown on the trial of the offense that a deadly weapon was used), 19.05 (providing that criminally negligent homicide is a state jail felony).

14:
We note that below, Appellant raised involuntariness regarding his jury waiver at the punishment phase, but he does not raise it on appeal.

15:
State v. Savage
, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996); 
see also
 
Tex. Code Crim. Proc. Ann.
 art. 42.01, § 1(7) (Vernon Supp. 2004-05).

16:
Tex. Code Crim. Proc. Ann.
 art. 42.01, § 1(7); 
Savage
, 933 S.W.2d at 499.

17:
See
 
Tex. R. App. P.
 21.1.

18:
See id.
;
 MacDonald v. State
, 105 S.W.3d 749, 752-53 (Tex. App.—El Paso 2003, pet. ref’d).

19:
Perkins v. Court of Appeals
, 738 S.W.2d 276, 280-81 (Tex. Crim. App. 1987) (orig. proceeding); 
Wright v. State
, 158 S.W.3d 590, 595 (Tex. App.—San Antonio 2005, pet. ref’d); 
see also 
Tex. R. App. P.
 21.1.

20:
See
 
Tex. Gov’t Code Ann.
 § 493.004 (Vernon 2004).

21:
Tex. Penal Code Ann.
 § 12.34(a) (Vernon 2003).

22:
Id.
 § 12.34(b).

23:
See
 
Tex. Gov’t Code Ann.
 § 507.001(a) (Vernon 2004).

24:
29 S.W.3d 642, 644-45 (Tex. App.—Houston [14
th
 Dist.] 2000, pet. ref’d).

25:
Riley v. State
, 328 S.W.2d 306, 307 (Tex. Crim. App. 1959); 
see also

Jenke v. State
, 487 S.W.2d 347, 348 (Tex. Crim. App. 1972).

26:
Tooke v. State
, 642 S.W.2d 514, 518 (Tex. App.—Houston [14
th
 Dist.]  1982, no pet.).

27:
Id.
 at 516.

28:
Id.
 (emphasis added).

29:
Id.
 at 518.

30:
Id.

31:
Id.

32:
State v. Dickerson
, 864 S.W.2d 761, 764 (Tex. App.—Houston [1
st
 Dist.] 1993, no pet.) (op. on reh’g).

33:
Id.
 at 762-63.

34:
Id.

35:
Id.

36:
Id.

37:
Id.
 at 763.

38:
Id.
 (emphasis in original).

39:
Id. 
at 764.

40:
121 S.W.3d 768, 769-73 (Tex. Crim. App. 2003) (Cochran, J., concurring).

41:
Id.
 at 771-72 (emphasis added).

42:
See
 
Tex. R. App. P.
 21.1.