

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00044-CR
_____


FRANKY PAUL JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 14,520


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A jury found Franky Paul Johnson (the appellant) guilty of intoxication assault. The jury assessed his punishment at ten years' imprisonment and made an affirmative finding that he used or exhibited a deadly weapon during the commission of that crime. Johnson now appeals, raising three specific points of error (and suggesting a fourth). We overrule each and affirm the trial court's judgment.

*Factual Background*

The evidence showed that during the early morning of February 26, 2007, Lonnie Mitchell was alerted by the loud sound of a vehicle screeching its tires and slinging gravel just outside the front of his house in the Pritchett community of Upshur County. Mitchell then went outside, saw a truck make a U-turn in the road, and heard the truck crash just a few moments later. Mitchell did not personally go to investigate the crash because, as he testified, automobile accidents are not uncommon in that area of the road and Mitchell's health problems precluded him from walking all the way out to the accident scene. The next day, Mitchell went to the accident scene (located about 1,200 feet down the road) and found cans and bottles of beer, along with sacks, a headlight, and broken glass.

As it turned out, the truck Mitchell had seen on the road had crashed only moments after he had seen it. There had been four occupants: the appellant, Jessie Ezell, Melissa Schmidt, and Rebecca Kutch. Kutch was ejected from the truck during the crash. Ezell and the appellant went

to Ezell's nearby home, got Ezell's truck, returned to the crash scene, and then drove Kutch and Schmidt to a Gilmer hospital. Kutch was admitted with severe injuries.

Trooper Stephen Sutton was dispatched to the hospital by the Upshur County Sheriff's Department on February 26 regarding a motor vehicle accident that had occurred earlier that morning in Upshur County. Sutton arrived at the hospital and located the appellant, Ezell, and Schmidt. Kutch was being treated by hospital staff. Sutton spoke with the appellant, and Sutton could tell the appellant had been drinking and had blood on his clothes. The appellant said he and Ezell had just happened upon Kutch and Schmidt's vehicle, found that the two girls had been hurt in an accident, and brought both to the hospital. Sutton believed the appellant's story to be incredible.

Trooper Sutton later spoke with Schmidt, who said the appellant had been driving the vehicle that was involved in the accident. Schmidt also told Sutton that she, Kutch, Ezell, and the appellant had been drinking and driving around Upshur County earlier that night. Schmidt said Kutch had been ejected from the truck as a result of the accident and was injured; Schmidt even added that Kutch had required assistance in breathing (presumably, in the form of CPR provided by Schmidt). Finally, Sutton testified that Kutch's injuries were so significant that when he arrived at the hospital, the treating physicians had already inserted a breathing tube down her throat.

Based on this information, Sutton arrested Johnson for lying to the officer about the circumstances surrounding the accident. Sutton later asked the appellant to perform several field sobriety tests; Johnson performed poorly, which caused Sutton to believe Johnson was intoxicated. Sutton then arrested the appellant for driving while intoxicated (DWI) and asked him to provide a

3

blood sample. Johnson refused. Sutton subsequently sought and obtained a search warrant from a neutral magistrate, had a nurse draw Johnson's blood, and submitted the blood sample for chemical analysis. The toxicology test results showed the appellant's blood-alcohol level was .144 at the time the blood was drawn.

## I. State Law Authorized the Blood Draw Despite the Appellant's Refusal To Provide Consent

In his first issue, the appellant contends the trial court abused its discretion by admitting the results of an analysis of his blood (which was drawn shortly following the accident) because "[t]he affidavit for [the] search warrant in the case at bar fails to establish probable cause in many contexts and for several reasons." The trial court admitted, over the appellant's objection, the results of the toxicology analysis of his blood showing his blood-alcohol content was well in excess of the legal limit. On appeal, the State contends (as it did before the trial court) that a search warrant was not required in this case and that the trial court did not abuse its discretion by denying the appellant's suppression motion.

We note that the record does not show that either party made a request for findings of fact and conclusions of law as regards the ruling on the motion to suppress. After a ruling on a motion to suppress, a nonprevailing party should attempt to get the rationale for the trial court's ruling on the record, either through a verbal explanation at the hearing or through express findings of fact and conclusions of law. *State v. Ross*, 32 S.W.3d 853, 858 (Tex. Crim. App. 2000). Under the ruling in *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006), if a request for such findings and conclusions is made (using Rule 297 of the Texas Rules of Civil Procedure for guidance), then a trial

4

court must make them; should it fail or refuse to make them, the courts of appeals are to remand the case for such findings and conclusions, rather than attempt to guess the rationale employed.

If the nonprevailing party fails to make the request and a trial court does not enter findings of fact and conclusions of law of its own accord, the nonprevailing party is not barred from raising the correctness of an adverse ruling. *Id.* However, in the absence of such a request and without any findings or conclusions in the record, we review a trial court's ruling on a motion to suppress under a bifurcated standard. We must accord almost total deference to the trial court's determination of historical fact and review de novo the trial court's application of law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). If the trial court did not make explicit findings of historical facts, we must review the evidence "in the light most favorable to the trial court's ruling, making the assumption that the trial court made explicit findings of fact, supported in the record, that buttressed its conclusion." *Dunn v. State*, 176 S.W.3d 880, 881–82 (Tex. App.—Fort Worth 2005, no pet.) (analyzing validity of consent for blood draw in vehicular homicide case). When a trial court does not specify its reason for denying a motion to suppress evidence, that ruling will be upheld on appeal if it is correct under any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Peddicord v. State*, 942 S.W.2d 100, 108–10 (Tex. App.—Amarillo 1997, no pet.) (determining trial court properly denied suppression of blood test results). In this case, the trial court did not make specific findings of fact, nor did it explicitly state its reasons for denying the appellant's motion.

5

The evidence adduced at trial has been previously summarized and, for the sake of avoiding redundancy, is not reiterated.  The occurrences of the night of the wreck as described above led to Trooper Sutton causing a sample of Johnson's blood to be taken from him while Johnson was at the hospital.

Generally, a person's blood may not be drawn without his consent.  Such a procedure constitutes a "search and seizure" for purposes of the Fourth Amendment, which typically requires the State to have probable cause before the fruits of such a search may be admissible in a trial against an accused. *Schmerber v. California*, 384 U.S. 757, 767 (1966).  However, consent is an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Montanez v. State*, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006); *Cisneros v. State*, 165 S.W.3d 853, 856 (Tex. App.—Texarkana 2005, no pet.).

Our law provides,

> (b)    A peace officer shall require the taking of a specimen of the person's breath or blood if:
>
>> (1)    the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft;
>>
>> (2)    the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense;
>>
>> (3)    at the time of the arrest the officer reasonably believes that as a direct result of the accident:
>>
>>> (A)    any individual has died or will die; or
>>>
>>> (B)    an individual other than the person has suffered serious bodily injury; and
>>
>> (4)    the person refuses the officer's request to submit to the taking of a specimen voluntarily.

6

TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon Supp. 2008).  This provision is a companion statute to Section 724.011 of the Texas Transportation Code, which has been characterized as our "implied consent statute."  This implied-consent doctrine embodied by Section 724.011 means that each person who willfully operates a motor vehicle on the highways and byways of this state impliedly consents to provide a specimen of his breath or blood if an officer reasonably believes that driver has caused death or serious bodily injury to another as a result of operating a motor vehicle while intoxicated.  *See generally State v. Neesley*, 239 S.W.3d 780, 784 (Tex. Crim. App. 2007) (discussing TEX. TRANSP. CODE ANN. § 724.011 (Vernon 1999), § 724.012); *Beeman v. State*, 86 S.W.3d 613, 615–16 (Tex. Crim. App. 2002) (discussing how implied-consent statute "gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant").

Trooper Sutton testified that he had arrested the appellant for DWI, that his investigation led him to reasonably believe Kutch had sustained serious bodily injury as a result of the accident at issue, and that the appellant had refused to provide a blood sample.  Thus, the trial court could have reasonably determined that the trooper's testimony satisfied the requirements of Section 724.012(b) and that a warrant was not required before the appellant's blood could be drawn without his express consent.  As this justification would support the trial court's denial of the suppression motion (where the trial court did not explicitly state the basis of its ruling), and as the sufficiency of the search warrant's affidavit would become moot, we will not say the trial court abused its discretion by

7

overruling Johnson's suppression motion. *Cf. Dunn*, 176 S.W.3d at 883; *and see Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).

## II. Factually and Legally Sufficient Evidence Supports the Deadly Weapon Finding

In his second and third issues, Johnson contends the evidence is factually and legally insufficient to support an affirmative finding that Johnson used or exhibited a deadly weapon during the commission of the underlying intoxication assault. The State disagrees. Again, we agree with the State.

When reviewing the legal sufficiency of the evidence to support any particular evidentiary finding, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have made the finding beyond a reasonable doubt. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). The jury's deadly weapon finding against Johnson can survive a legal sufficiency challenge only if there is legally sufficient evidence to support findings that (1) a vehicle can meet the statutory definition of a deadly weapon, (2) Johnson used or exhibited a vehicle during the alleged offense, and (3) Johnson's operation or use of that vehicle put some person in actual danger. *See Drichas*, 175 S.W.3d at 798; *Mathonican v. State*, 194 S.W.3d 59, 67–68 (Tex. App.—Texarkana 2006, no pet.).

When reviewing a case in which a point of appeal questions the factual sufficiency of the evidence upon which a conviction was based,

> it is not enough that the appellate court harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. An appellate

8

court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict. . . . [A]n appellate court must first be able to say, with some objective basis in the record, that the *great weight and preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial.

*Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

With that standard in mind, we take into account that, "Objects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense." *Mathonican*, 194 S.W.3d at 69 (citing *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991)). "A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Id.* (citing *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992)). "Specific intent to use a motor vehicle as a deadly weapon is not required." *Drichas*, 175 S.W.3d at 798 (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)); *see Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995).

Mitchell heard the driver of the truck squeal the truck's tires, heard the driver loudly race the engine, heard gravel being slung, and saw the truck make an abrupt u-turn in the road. Trooper Sutton testified that Schmidt had told him that the four had been joy-riding and drinking throughout the night. Schmidt also placed the appellant behind the wheel of the truck at the time of the accident. There was no question that the evidence showed Kutch suffered serious bodily injury as a result of being thrown from the truck during the accident. Thus, we conclude that a jury could have

concluded—beyond a reasonable doubt—that the manner of the appellant's use of the truck (the reckless driving) was not only *capable* of causing serious bodily injury or death, but *did cause* serious bodily injury to Kutch because the appellant's reckless driving *did result* in Kutch being thrown from the truck and seriously injured. *Cf. Roberts v. State*, 766 S.W.2d 578, 579–80 (Tex. App.—Austin 1989, no pet.) (pickup truck was deadly weapon where evidence showed reckless driving not only could have caused, but did cause, death or serious bodily injury to other victims in accident).

## III. Johnson Failed To Challenge His Initial Arrest for Giving a False Report to a Peace Officer

In a final aside found only within the summary of the argument portion of his brief, Johnson's appellate counsel raises the question of whether, at the time of Johnson's arrest for giving a false report to a peace officer[1] (which formed the basis of Johnson's initial arrest and detention that subsequently led to the field-sobriety testing which formed the basis of the intoxication assault charge), the officer had probable cause to arrest Johnson for the alleged false report. Johnson's appellate counsel concedes this issue was not first raised at trial, then proceeds to characterize this as an "unassigned" error for us to review. Johnson's appellate counsel does not provide any further record citation or discussion of this "unassigned" error within the body of the appellant's brief.

Because Johnson did not raise this issue before the trial court, it has not been *preserved* for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A).

---

[1]*See* TEX. PENAL CODE ANN. § 37.08(a)(1) (Vernon 2003) (person commits offense if he makes false statement to peace officer and statement material to criminal investigation).

## III.    Appellant Has Not Demonstrated Reversible Error

The trial court did not err by denying Johnson's motion to suppress the blood-test results. Factually and legally sufficient evidence supports the trial court's affirmative finding that Johnson used or exhibited a deadly weapon (a motor vehicle) during the commission of the underlying intoxication assault. Johnson failed to preserve for appellate review any issue regarding the propriety of his initial arrest for giving a false report to a peace officer. Accordingly, we overrule each of Johnson's appellate issues and affirm the trial court's judgment.[2]


Bailey C. Moseley
Justice


Date Submitted:    November 14, 2008
Date Decided:      November 26, 2008

Do Not Publish

---

[2] We note that the prayer of the appellant's brief asks that "the judgment and sentence of the trial court should be reversed and an acquittal ordered, or in the alternative, the case should be remanded and the Appellant granted a new trial." None of the appellant's issues on appeal would, even if sustained, result in a finding that the evidence supporting the appellant's conviction was legally insufficient. As such, the appellant's prayer for a judgment of acquittal is inappropriate.

11