**Opinion issued November 5, 2015**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-14-00721-CR

———————————

**JAMES JORDAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 13-DCR-062954B**

---

### MEMORANDUM OPINION

James Jordan was convicted of burglary of a habitation with intent to commit felony sexual assault.[1] The jury found him guilty and sentenced him to 30 years' confinement. Jordan moved for a new trial, but his motion was denied.

---

[1] TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011) (burglary); *Id.* § 22.011 (West 2011) (sexual assault).

Jordan appeals that order, arguing that multiple errors during his trial warranted a new trial, including (1) juror misconduct, (2) a *Brady* violation, (3) new evidence discovered post-trial, (4) improper enhancement of the punishment range, and (5) error in reading back selected testimony to the jury.

We affirm.

## Background

Shortly after returning to her home around 11:00 in the evening, Lupe Valdez heard a knock on her door and someone yell that her car was being towed. Valdez opened her front door, saw Jordan (whom she recognized as the person who had been loitering in her apartment complex parking lot a couple of months earlier), told him "to go away," and tried to close her door. Jordan blocked the door with his foot and pushed his way into her apartment. Valdez testified that Jordan threatened to kill her if she called the police.

According to Valdez, Jordan indicated to her that he would leave if she would give him a glass of water. When Valdez turned to go to the kitchen, Jordan choked her with a cloth and began to push her toward her bedroom. Jordan then "pushed [her] over the bed" and began removing her clothes. According to Valdez, Jordan "was telling me that I was going to end up having sex with him tonight, and that if I moved he was going to kill me."

Valdez testified that she managed to call 911 three times from her cell phone, which she hid beneath a bed pillow. During her last call, Jordan heard the phone and took it from her. At that instant, there was a loud knock on the door, Jordan "froze," and Valdez opened the door for the police to enter. The police officers arrested Jordan. During their investigation, the officers photographed Valdez's bed, pillows, bedroom, and living room area. The photo of Valdez's bed showed two pillows leaning against the head of the bed and a comforter that was still fully covering the mattress but had been creased and rumpled. The photos were later admitted at trial.

Jordan was indicted for the offense of burglary of a habitation with the intent to commit felony sexual assault. He pleaded not guilty. The jury found him guilty and sentenced him to 30 years' confinement. Jordan's new-trial motion was denied, and he timely appealed.

**Juror Experiment**

In his first issue, Jordan argues that the trial court erred by denying his new-trial motion because he had presented evidence that one of the jurors conducted an at-home experiment during a break from jury deliberations, then returned and told her fellow jurors about the experiment as well as the conclusions she drew from it. Jordan contends that the experiment had a prejudicial effect, warranting a new trial. *See* TEX. R. APP. P. 21.3(f) (providing for new trial if jury receives other

evidence after retiring to deliberate); *id.* 21.3(g) (providing for new trial if jury has engaged in misconduct); *Ryser v. State*, 453 S.W.3d 17, 41 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (analyzing whether trial court erred by denying new-trial motion based on outside influence).

## A.   Rule 21.3(f) other evidence

Texas Rule of Appellate Procedure 21.3 states that a defendant "must be granted a new trial . . . when, after retiring to deliberate, the jury has received other evidence . . . ." TEX. R. APP. P. 21.3(f). To be entitled to a new trial on this basis, the defendant must show that (1) the jurors actually received other evidence and (2) the evidence was detrimental. *Guice v. State*, 900 S.W.2d 387, 389 (Tex. App.—Texarkana 1995, pet. ref'd); *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex. Crim. App. [Panel Op.] 1978) (applying earlier version of rule). Juror experiments may qualify as "other evidence." *See Douthit v. State*, 482 S.W.2d 155, 160 (Tex. Crim. App. 1971), *overruled on other grounds by Ex parte McWilliams*, 634 S.W.2d 815, 822–24 (Tex. Crim. App. 1980) (op. on reh'g).

"While as a general rule it is improper for a juror to perform experiments or demonstrations in the jury room, it is not every demonstration that calls for a reversal." *Id.*; *McLane v. State*, 379 S.W.2d 339, 342 (Tex. Crim. App. 1964). "A reviewing court need not grant a new trial absent a showing that the jurors during the experiment discovered and were influenced by some *new* fact hurtful to the

4

appellant." *Guice*, 900 S.W.2d at 389. Further, if the new evidence is not detrimental to the appellant's case, it does not require a new trial. *See Douthit*, 482 S.W.2d at 160. "Whether the jurors received new and harmful evidence during their deliberations is a fact issue to be decided by the trial court, and it is a question of degree." *Guice*, 900 S.W.2d at 389; *see Holland v. Lovelace*, 352 S.W.3d 777, 783 (Tex. App.—Dallas 2011, pet. denied).

## B.      Rule 21.3(g) jury misconduct

Texas Rule of Appellate Procedure 21.3(g) provides for a new trial if there has been jury misconduct that results in the defendant not receiving a fair and impartial trial. TEX. R. APP. P. 21.3(g). Like with Rule 21.3(f), there is a requirement that the misconduct be injurious. *See Gomez v. State*, 991 S.W.2d 870, 871, 873 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

## C.      Outside influence on jury

With regard to an allegation of juror misconduct, Rule 606(b) allows a juror to testify on whether "any outside influence was improperly brought to bear upon any juror." TEX. R. EVID. 606(b). However, "a juror may not testify as to any matter or statement occurring during the jury's deliberations, the effect the matter had on any juror's mind or mental process, or how the matter influenced the juror's decision-making." *Ryser*, 453 S.W.3d at 40.

5

"Outside influences do not result in automatic reversals." *Id.* at 41. "An 'outside influence' is problematic only if it has the effect *of improperly* affecting a juror's verdict in a particular manner—for or against a particular party." *Colyer v. State*, 428 S.W.3d 117, 129 (Tex. Crim. App. 2014). Because we may not "delve into [jury] deliberations," we review the possible harm caused by the outside influence using an objective, "hypothetical average juror" standard, without consideration of the actual effect that the influence had on these particular jurors. *McQuarrie v. State*, 380 S.W.3d 145, 153–54 (Tex. Crim. App. 2012); *Ryser*, 453 S.W.3d at 41. The question, then, is, if there was an outside influence, is there a "reasonable possibility" that it had a prejudicial effect by impacting the verdict, using the objective standard of a hypothetically average juror. *McQuarrie*, 380 S.W.3d at 154; *Ryser*, 453 S.W.3d at 41.

Thus, like the two appellate rules permitting a new trial based on jury conduct, this rule also requires prejudice. *See McQuarrie*, 380 S.W.3d at 154; *Ryser*, 453 S.W.3d at 41.

## D. The juror's at-home experiment

Two jurors testified at the hearing on Jordan's new-trial motion. They explained that the jury had taken a break from its deliberations over the Memorial Day weekend. When the jury returned Tuesday morning to continue its deliberations, one of the jurors explained to her fellow jurors that, while at home,

6

she had asked her husband to "throw her on the bed" and also to place her on the bed more gently. According to the juror, when she was thrown on the bed, "the pillows flew everywhere." But when she was placed gently on the bed, the bed "looked exactly like in the pictures" of Valdez's bed taken by the investigating officers. According to one of the testifying jurors, these statements led the jurors to question whether Valdez had testified, during the guilt-punishment phase of the trial, to being thrown or placed on the bed.

The jury submitted a written request to have Valdez's testimony read back to them without specifying the nature of the jury's dispute. The trial court concluded that the jury's request was not sufficiently specific and suggested that it rephrase its request. *See* TEX. CODE CRIM. PROC. ANN. art. 36.28 (West 2015) (requiring that jury's request to have testimony read back identify point of dispute). Because the jury failed to do so, no testimony was read back to provide relevance to the reenactment discussion. Nevertheless, the testifying jurors stated that the reenactment was influential.

## E.    The trial court's ruling

The trial court denied Jordan's motion for new trial, concluding that the subject of the "re-enactment is within every juror's common, every day experience and is not an outside influence improperly brought to bear on the jury. There is no

7

reasonable possibility that it had a prejudicial effect on the 'hypothetical average juror.'"

## F.    Standard of review

A trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *McQuarrie*, 380 S.W.3d at 150; *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001); *Guice*, 900 S.W.2d at 389 ("A motion for a new trial is addressed to the sound discretion of the trial court and will only be overturned on appeal by a showing of clear abuse of discretion."). A trial court abuses its discretion when no reasonable view of the record could support the trial court's ruling. *McQuarrie*, 380 S.W.3d at 150. We defer to the trial court's determination of questions of fact. *See Guice*, 900 S.W.2d at 390.

## G.    No abuse of discretion to deny a new trial on this basis

The juror's experiment showed that, when she was thrown onto her bed by her husband, her bed pillows were disturbed, but, when she was laid more gently, her bed looked similar to Valdez's bed in the photo admitted into evidence, which depicted a slightly rumpled comforter but undisturbed pillows. According to the two testifying jurors, this information was influential.

First, we agree with the trial court that the likely condition of a bed following these two scenarios is information within the common knowledge of an

8

average juror. Everyday life experience informs us that gently sitting or lying in one's bed does not cause the pillows to catapult to the floor.

Second, the testifying jurors stated that they were unable to determine how this information related to Valdez's testimony. After the jury heard about the experiment, its members could not recall how Valdez had described the manner in which she entered her bed, i.e., whether she had testified that she had been thrown onto the bed or not. The jury asked to receive that testimony again, but it was not given. Accordingly, the jury was unable to apply the results of the experiment to its assessment of Valdez's testimony. *Cf. Douthit*, 482 S.W.2d at 160 (affirming denial of new trial after juror attempted experiment but gathered no useful information from it).

Third, to the extent that the experiment indicated anything, it supported Jordan's defensive argument—stated twice in closing argument—that "[t]his is not a bed of struggle." Jordan specifically referenced the photo of the bed in his closing argument and suggested to the jury that the evidence did not support Valdez's testimony that she had been thrown onto her bed.

To be granted a new trial because of the juror's experiment, Jordan was required to demonstrate harm. *See Stephenson*, 571 S.W.2d at 176 (predecessor to Rule 21.3(f) for other evidence); *Gibson v. State*, 29 S.W.3d 221, 224 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (Rule 21.3(f) other evidence);

9

*Gomez*, 991 S.W.2d at 871 (Rule 21.3(g) jury misconduct); *McQuarrie*, 380 S.W.3d at 153–54 (outside influence). Jordan has not demonstrated how the juror's reenactment was harmful to his defense. If anything, it supported his argument that the bed would have looked more disturbed if the events had occurred as Valdez had described them in her testimony. Without any showing of harm, the trial court did not abuse its discretion in denying Jordan's motion for new trial on this basis.

We overrule Jordan's first issue.

### *Brady* **Violation**

In his second issue, Jordan argues that the State withheld from him information regarding Valdez's "legal identity, including legal name and gender" in violation of the *Brady* disclosure requirements.

According to an affidavit signed by Jordan's counsel, there were rumors within the court staff during trial that Valdez might be transgender.[2] Jordan contends that this information should have been disclosed by the State before trial.

The police report identified Valdez as "Lope Valdez." That spelling error was later corrected and, in the amended indictment filed in February 2014—three months before trial—the name was corrected to "Lupe Valdez." This is Valdez's legal first and last name; however, her middle name "Isaac" was not listed. Neither was there an indication in the indictment of Valdez's gender.

---

[2] Jordan's counsel does not state the substance of the rumors or any action she took or inquiries she made in response to the rumors.

## A.   Standard of review

In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196–97. *Brady* evidence includes both exculpatory evidence and impeachment evidence. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).

Evidence is "material" if there is "a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different." *Id.* (quoting *U.S. v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985)). A "reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Bagley*, 473 U.S. at 682, 105 S. Ct. at 3383).

Thus, a *Brady* violation occurs if a prosecutor: (1) fails to disclose evidence,[3] (2) favorable to the accused, (3) which creates a reasonable probability

---

[3]   The Texas Court of Criminal Appeals has extended *Brady* and held that "the duty to disclose such evidence is applicable even if there has been no request by defendant." *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). However, "the [State] is not required to seek out exculpatory evidence independently on appellant's behalf, or furnish appellant with exculpatory or mitigating evidence that is fully accessible to appellant from other sources." *Id.* at 407; *accord Jackson v. State*, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976).

of a different outcome. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); *Wyatt*, 23 S.W.3d at 27.

## B.     Evidence not demonstrated to be favorable or material

Jordan first implies that the incompleteness of the information provided to him by the State impacted his ability to research Valdez's criminal history. He asserts that the State "concealed the review" of Valdez's criminal history "because the legal name and sex of the victim would have been apparent." However, he notes that the State notified him that Valdez had no criminal history, and he does not contend that any relevant information existed that he had been unable to timely uncover other than Valdez's gender, as identified in other legal documents.

Jordan next contends that knowledge of Valdez's full legal name and gender would have made a difference in the outcome of this case and that withholding that information denied him a fair trial. Jordan maintains that a fair trial is premised on the "inherent expectation that [Valdez] or any witness is who the state says he or she is." Jordan's attorney proffered an affidavit in support of his new-trial motion, stating that she did not learn until after Jordan was convicted that Valdez is identified in legal documents as a man. In his brief, Jordan discusses at length his belief that Valdez's transgender status would have made a difference in his trial but offers few specifics of how it would have mattered. The only specific statements he makes are that (1) "the prosecution's painting of the complainant as a 'damsel

in distress' may have  been rebutted with testimony, medical records and cross-examination as well as other inquiry into the motives and mens rea of Appellant vis-à-vis the complainant" and (2) had Jordan known the information, he "might have argued impossibility, mistake, or heat of passion." More generally, he argues that the State's decision to "conceal" the information demonstrates its materiality and that the nondisclosure is analogous to undisclosed government informants.[4]

It appears that Jordan is arguing that, were Valdez identified as a man at trial, a sexual-assault related conviction would have been less likely. But this is an "intent" crime. A person commits a burglary offense if, without the effective consent of the owner, the person enters a home with *intent* to commit a felony. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2014). Sexual assault is a felony. *Id.* § 22.011. "Intent may be inferred from the defendant's conduct and surrounding circumstances." *Linder v. State*, 828 S.W.2d 290, 294 (Tex. App.—Houston [1st Dist.] 1992, pet. denied).

By his words and actions, Jordan expressed an intention to sexually assault Valdez. Valdez testified that Jordan choked her with a rag, forced her into her

---

[4] Jordan cites to *Roviaro v. United States*, 353 U.S. 53, 77 S. Ct. 623 (1957). In that case the Supreme Court discussed the justifications for allowing the government to protect the identity of its informants, noted that no "fixed rule" applies to when non-disclosure is permitted, and approved a balancing test to resolve the disclosure issue, which takes into account "the particular circumstances of each case . . . [including] the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* 353 U.S. at 62, 77 S. Ct. at 628–29.

13

bedroom, and, while on top of her, told her that "this was going to be my night with a black man, and that he was going [to] do it forcefully whether I wanted to or not." He then told her that, if she moved, he would "cut" and "kill" her.

Any error Jordan may have made regarding Valdez's gender might have influenced his future actions during the course of the sexual assault, but it could not have retroactively altered his intent upon entering the home. *Linder*, 828 S.W.2d at 294 (stating that "to prove intent to commit a felony . . . in a prosecution for burglary, the State must show that the defendant's intent existed at the time of his entry"); *cf. Shipp v. Texas*, 482 S.W.2d 870, 870 (Tex. Crim. App. 1972) (holding that intent to burglarize was established even if defendant was acting under mistake of fact regarding object of his offense).

Jordan's intent upon entering Valdez's home was influenced by his then-current observations of Valdez and her gender expression, regardless how that information might correspond to her "legal identity . . . and gender." His intentions could not have been influenced by information he did not then possess. *Cf. Dougherty v. State*, 387 S.W.3d 654, 658–59 (Tex. Crim. App. 2013) (noting that, with intent crimes, "timing [is] important" because "[c]riminal liability depends upon a person's culpable mental state at the time the person performs some criminal act and is the convergence of a bad act and a guilty mind."). We reject the implication that subsequent awareness of a complainant's transgender status is

14

material to whether a burglar intended a sexual assault before such information was known.

We conclude that Jordan has not demonstrated how the undisclosed information was favorable to him or material, meaning that there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton*, 86 S.W.3d at 612. As a result, we conclude that the trial court did not abuse its discretion in denying Jordan's motion for new trial on this basis.

We overrule issues two.

## Newly Discovered Evidence

In his third issue, Jordan challenges the denial of his new-trial motion, contending that Valdez's identity and gender were newly discovered evidence that warranted a new trial.

To obtain a new trial based on newly discovered evidence, Jordan was required to show that: (1) the evidence came to light after trial; (2) the failure to discover the evidence sooner was not due to a lack of diligence; (3) the new evidence is not cumulative; and (4) the new evidence is so material that it would probably produce a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 88 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

15

Similar to the *Brady* challenge, Jordan has not demonstrated that Valdez's "legal identity and gender" were material. Jordan argues that the information would have discredited the State's presentation of Valdez as a "damsel in distress." But whether Valdez's gender would—or would not—cause anyone to view her as a "damsel in distress" is wholly immaterial to Jordan's intent when he entered Valdez's apartment without consent. There was evidence that Jordan expressed his intentions to Valdez, specifically telling her that she was going to have sex with him and threatening to harm her if she resisted. Subsequent knowledge cannot undo Jordan's stated intentions upon entering the apartment. *See Linder*, 828 S.W.2d at 294 (stating that intent is measured at time of entry); *Shipp*, 482 S.W.2d at 870 (holding that intent to burglarize is established even if defendant was mistaken about object of offense).

Because Jordan offers no viable argument that it was probable this newly discovered information would have produced a different result in his trial, we overrule issue three.

### Enhancement of Offense

Jordan pleaded true to three enhancement allegations, and the jury found all three to be true. The three convictions occurred in Louisiana, and the offenses were (1) felony theft, (2) felony possession of cocaine, and (3) attempted simple escape from custody. In his fourth issue, Jordan contends that the trial court erred by

permitting these out-of-state convictions to be used to enhance his punishment. He argues that two of these offenses—cocaine possession and attempted simple escape from custody—would be "categorized by Texas as state jail offenses based on the length of confinement" and, therefore, were not properly available to enhance Jordan's punishment to a habitual-felony-offender range. He intimates that the third conviction may not have been final.

## A.    Standard of review

Whether an out-of-state offense constitutes a felony for purposes of enhancement is a question of law that we review de novo. *See Smith v. State*, 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010); *State v. Richardson*, 439 S.W.3d 403, 404 (Tex. App.—Fort Worth 2014, pet. ref'd) (citing *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004)).

## B.    Enhancement was not in error

First, Jordan argues that two of his prior convictions should not have been used for enhancement purposes because they would be considered "state jail felonies" in Texas.[5]

Under Texas law, classification of offenses is based on the length and location of confinement, taking into account also the amount of any fines imposed. *See, generally*, TEX. PENAL CODE ANN. §§ 12.01–.35 (West Supp. 2014). At the

---

[5]    Jordan does not argue that his felony theft conviction merits the same classification.

17

lower end are misdemeanor classifications, with the most severe involving confinement in "jail" not to exceed 180 days and a fine not to exceed $2,000. *Id.* §§ 12.21–.23. The different levels of felony classifications are assigned for "imprisonment in the Texas Department of Criminal Justice," with the lowest level, a third-degree felony, covering imprisonment for not less than two years. *See id.* §§ 12.31–.34 (discussing capital felonies and first- through third-degree felonies). In the middle is the category of "state jail felony," which applies to offenses punished by confinement "in a state jail" between 180 days and two years. *Id.* § 12.35

Thus, Texas law makes a distinction between confinement in jail for two years or less (a misdemeanor or state jail felony) and confinement in prison for more than two years (a third degree felony or higher). *See id.* §§ 12.01–.35; *cf. Dunn v. State*, 176 S.W.3d 880, 885–86 (Tex. App.—Fort Worth 2005, no pet.) (discussing confinement in jail versus prison).

The Penal Code uses that same two-year mark to classify out-of-state offenses for evaluating whether an offender qualifies for habitual-felony-offender punishment enhancement. TEX. PENAL CODE ANN. §§ 12.41–.42 (West Supp. 2014). An out-of-state conviction is classified as a "felony of the third degree" if "imprisonment in the Texas Department of Criminal Justice or another penitentiary is affixed to the offense as a *possible* punishment." *Id.* (emphasis added); *Id.*

18

§ 12.34 (setting punishment for third-degree felony at not less than two years). Any out-of-state conviction that does not qualify as a third-degree felony is considered a misdemeanor. *Id* § 12.41.

Under Louisiana law, the maximum punishment for cocaine possession is five years. LA. REV. STAT. ANN. § 40:967(c) (2013) (establishing punishment for possession at "imprison[ment] with or without hard labor for not more than five years"); *cf.* LA. REV. STAT. ANN. § 15:744.5(3) (2012) (referring to variety of Louisiana confinement locations simply as "prison"). And the maximum punishment for attempted simple escape is two and one-half years. *Id.* § 14:110(b)(4) (2013) (establishing punishment for simple escape at "imprison[ment] with or without hard labor for not less than two years nor more than five years"); *id.* § 14:27(d)(3) (punishment for *attempted* offenses, not including theft or those punishable by death or life imprisonment, limited to "one-half of the longest term of imprisonment prescribed for the offense so attempted").

Regardless if Jordan was actually sentenced to more than two years for either of these two offenses, both have "possible punishments" of more than two years' confinement. LA. REV. STAT. ANN. § 40:967(c); *id.* § 14:110(b)(4); *id.* § 14:27(d)(3); *see* TEX. PENAL CODE ANN. § 12.41. Therefore, both are treated as felonies of the third degree for enhancement purposes. *See id.* § 12.42(d)

19

(allowing two felony offenses to enhance punishment for first-degree felony to imprisonment for not less than 25 years nor more than 99 years).

Next, Jordan contends that the State failed to present sufficient proof of the felony theft conviction underlying his subsequent conviction for violation of probation. When a defendant pleads "true" to an enhancement paragraph, the State is relieved of its burden to prove habitual-offender status and the defendant waives any complaint that the evidence is insufficient to support the enhancement. *Wilson v. State*, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984) (en banc); *Roberson v. State*, 371 S.W.3d 557, 560 (Tex. App.—Houston [1st Dist.] 2012) (*Roberson I*), *aff'd*, 420 S.W.3d 832 (Tex. Crim. App. 2013) (*Roberson II*). Accordingly, Jordan's "true" plea provided sufficient evidence of the enhancement.

Jordan appears to argue that the felony theft conviction falls within a recognized exception to the rule stated in *Roberson*: a plea of "true" is not sufficient evidence of an enhancement allegation if the record affirmatively reflects that the prior conviction was not final. *See Roberson II*, 420 S.W.3d 832, 838; *Roberson I*, 371 S.W.3d at 560. He argues that his felony theft conviction—for which he received probation—should not be considered a final conviction "unless Louisiana law considers it final."

While Jordan does not address whether Louisiana treats a felony theft conviction that led to probation as a final conviction, for enhancement purposes,

20

our review of Louisiana law indicates that it does. Article 893 of the Louisiana Code of Criminal Procedure provides in pertinent part:

> [I]f the court finds at the conclusion of the probationary period that the probation of the defendant has been satisfactory, the court may set the conviction aside and dismiss the prosecution. The dismissal of the prosecution shall have the same effect as acquittal, except that the *conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender, and further shall be considered as a first offense for purposes of any other law or laws relating to cumulation of offenses*.

LA. CODE CRIM. PROC. ANN. art. 893(e) (2010) (emphasis added). Thus, under Louisiana law, probation on a felony conviction is a final conviction. *See id.*; *see also Dominque v. State*, 787 S.W.2d 107, 108 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (interpreting article 893). Jordan has not established that his conviction falls within the exception discussed in the *Roberson* cases; therefore, Jordan's "true" plea satisfied the State's burden to establish the conviction.

We conclude that the trial court did not err by including these three offenses as enhancements or by denying Jordan's new-trial motion on this issue.

Jordan also contends, without adequately briefing the issue, that his punishment is excessive, in violation of the Eighth Amendment. U.S. CONST. amend. VIII. He has waived the argument by not briefing the issue. TEX. R. APP. P. 38.1(i).

We overrule Jordan's fourth issue.

21

## Testimony Read Back to Jury

In his fifth issue, Jordan contends that the trial court erred by (1) allowing testimony to be read to the jury without first determining that there was a dispute among the jury members as to specific testimony and (2) reading only the direct-examination portion and not cross-examination portions of the testimony.

During deliberations, the jury presented to the trial court two requests for testimony to be read back. One request was denied because it did not specify what was in dispute. The other request, Valdez's testimony concerning "her first encounter with Mr. Jordan, the first approach in October/November 2012," was granted, and testimony was read back to the jury on that issue.

There is no indication in the record that Jordan objected to the testimony being read back at that time. In fact, discussions between counsel and the trial court indicate that Jordan was made aware of what would be read back and agreed to the selection. The prosecutor explained the events at follows:

> [T]hat portion of the testimony, very limited, was read by the court reporter in chambers to counsel, and to the State, and to the Court. And by agreement, only that portion was—was read to the jury in response to one of the questions.

Jordan did not dispute the characterization. It was not until the following day that Jordan asserted an objection to the reading-back of the testimony.

We do not reach the merits of this issue because Jordan failed to properly preserve it for appellate review. TEX. R. APP. P. 33.1; *Hollins v. State*, 805 S.W.2d

22

475, 476 (Tex. Crim. App. 1991) (en banc) ("In order to be considered timely, an objection must be made as soon as the ground of objection becomes apparent."). Because he did not object until the next day, Jordan has waived this issue. *See Hollins*, 805 S.W.2d at 477 (appeal for reading back testimony to jury was waived after untimely objection).

## Conclusion

The judgment of the trial court is affirmed.


Harvey Brown
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

23